RIEMER & ASSOCIATES LLC
Attorneys for Plaintiff
Office and Post Office Address
60 East 42nd Street, Suite 2430
New York, New York  10165
(212) 297-0700

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JULIE JACOBY                                                    07 Civ 4627 (LAK)(RLE)

                              Plaintiff,

             -against-

HARTFORD LIFE AND ACCIDENT INSURANCE
COMPANY

                              Defendant.
-----------------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DECLARE UNCONSTITUTIONAL THE ARBITRARY AND CAPRICIOUS STANDARD OF REVIEW AND TO GRANT PLAINTIFF A DE NOVO PLENARY PROCEEDING

Of Counsel
        Scott M. Riemer
        Jonathan Feigenbaum
        Rachel Wilgoren

<u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES………………………………………………………………..ii

PRELIMINARY STATEMENT .........................................................................……...1

FACTUAL BACKGROUND.............................................................................……...3

ARGUMENT .................................................................................................……...5

   I.   JACOBY HAS A CONSTITUTIONAL RIGHT TO HAVE HER ERISA
       INSURANCE CASE, A DISPUTE BETWEEN TWO PRIVATE LITITGANTS,
       DECIDED UNDER THIS COURT'S ARTICLE III JUDICIAL POWER ..............……...5

       A.  The Constitution Requires the Adjudication of "Private Rights" By An
           Unfettered Article III Court ....................................................................6

       B.  Jacoby's Insurance Benefits Are "Private Rights" Requiring Article III
           Adjudication....................................................................................7

       C.  The Two Limited Exceptions Specified in *Thomas* and *Schor* are
           Inapplicable……………………………………………………………..9

          1.  The Regulatory Exception Enunciated In *Thomas* Is Inapplicable.........………9

          2.  The Waiver Exception Enunciated In *Schor* Is Inapplicable………………...11

              a. There is No Evidence that Congress Intended to Establish a
                Regime by which a Claimant Could Waive Article III Rights...........…...12

              b. Jacoby Did Not Waive Her Right To Article III Adjudication............………13

   II.  DEFERENTIAL REVIEW UNDER THE ARBITRARY AND CAPRICIOUS
       STANDARD IMPERMISSIBLY LIMITS THIS COURT'S ARTICLE III
       JUDICIAL POWER ....................................................................……14

CONCLUSION.....................................................................................……18

TABLE OF AUTHORITIES

CASES

*Adams v. United States ex rel. McCann,* 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942)…….12

*Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n,* 430 U.S. 442 (1977), 97 S.Ct. 1261...………....……………………………………………………………....7

*Black v. UNUMProvident Corp.*, 245 F.Supp.2d 194 (D.Me. 2003)……………………………10

*Commodity Futures Trading Commission v. Schor,* 478 U.S. 833, 106 S.Ct. 3245 (1986)…………………………………………………………………………………5-7, 9, 11-13

*Crowell v. Benson,* 285 U.S. 22 (1932)…………………………………………………………7, 8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786 (1993)…………………………………………...……………………………………..17

*Downs v. Liberty Life Ass. Co. of Boston*, 2005 U.S. Dist. LEXIS 22531 (N.D. Tex. 2005)………………………………………………………………………………....9

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)………………………………………………………………………15, 18, 19

*Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989)…………………………………………………………………………….....6

*Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708 (2002)………………………………………………………………………..…...11

*Jones v. UNUM Life Ins. Co. of Am.,* 223 F.3d 130 (2d Cir. 2000)………………..…..………15

*Lane v. Hartford Life and Accident Ins. Co.*, 2006 U.S. Dist. LEXIS 83205 (S.D.N.Y. 2006)…………………………………………………………………...……14, 16

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803)………………………………………………6

*Miller v. United Welfare Fund,* 72 F.3d 1066 (2d Cir. 1995)……………..………..14, 15, 17

*Murray's Lessee v. Hoboken Land & Improvement Co.,* 59 U.S. (18 How.) 272, 15 L.Ed. 372 (1855)………………………………………………………………………………5

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50 (1982), 102 S.Ct. 2858…………………………………………………………………………....6, 8

*Pagan v. NYNEX Pension Plan*, 52 F.3d 438 (2d Cir. 1995)……………….…………..14, 15, 19

*Pegram v. Herdrich,* 530 U.S. 211, 147 L. Ed. 2d 164, 120 S.Ct. 2143 (2000)……………..…..19

*Perry v. Simplicity Eng'g, Div. of Lukens Gen. Indus.,* 900 F. 2d 963 (6th Cir. 1990)...........................................................................................................14

*Peterson v. Continental Cas. Co.*, 282 F.3d 112 (2d Cir. 2002)………………………..………..14

*Pilot Life v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549 (1987)……………………………...……..…..8

*Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 122 S.Ct. 2151 (2002)………………………………………………………………………………19

*Samedy v. First UNUM Life Ins. Co. of Am.*, 2006 U.S. Dist. LEXIS 13375 (E.D.N.Y. 2006)………………………………………………………………………..……..14, 17

*Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 105 S.Ct. 3325 (1985)..........................................................................................................5, 7-10

*Zuckerbrod v. Phoenix Mut. Life Ins. Co.*, 78 F.3d 46 (2d Cir. 1996)...................................…1, 15

## CONSTITUTIONAL MATERIALS

Article I………………………………………………………..…………..5, 9-12

Article III…………………………………………………….…………….1, 5-16, 18

## FEDERAL STATUTES

ERISA §2, 29 U.S.C. §1001…………………………………………..…………………14

ERISA §2(b), 29 U.S.C. §1001(b)………………………………………..…………10, 16

ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(b)…………………………………..7, 10, 16, 18

ERISA §502(e)(1), 29 U.S.C. §1132(e)(1)…………………………………..…………10, 11

ERISA §502(f), 29 U.S.C. §1132(f)………………………………………………..…………10

ERISA §514(b)(1), 29 U.S.C. §1144(b)(1)......................................................................8

<u>FEDERAL RULES OF CIVIL PROCEDURE</u>

Rule 1……………………………………………………………………………….………16

Rule 81……………………………………………………………………………………...…16

Rule 702……………………………………………………………………………………….17

<u>LEGISLATIVE MATERIALS</u>

S. Report 93-383, reprinted in 1974 U.S. Code Cong. & Admin. News 5000…………...10-11, 14

<u>SECONDARY MATERIALS</u>

Richard H. Fallon, *Of Legislative Courts, Administrative Agencies, and Article III*, 101 Harv. L. Rev. 916 (1988) .........................................................................................................……..5

PRELIMINARY STATEMENT

Jacoby requests bold intervention by this Court.  She respectfully requests that this Court declare unconstitutional the arbitrary and capricious standard of review[1] as used by District Courts to resolve employee benefit cases involving fully insured ERISA plans ("ERISA Insurance Case").[2]  Instead, this Court is urged to decide Jacoby's ERISA Insurance Case in a *de novo* plenary proceeding.

The arbitrary and capricious standard of review, which provides only a review proceeding and grants deference to the pre-litigation benefit determination of a private party, was created by the Courts to avoid being "substitute plan administrators" and to foster expeditious resolution of ERISA claims.  Not only is this a misreading of ERISA and its legislative history, which unambiguously provides for a plenary proceeding, but in judicially fashioning the arbitrary and capricious standard of review, no court, including the Second Circuit and Supreme Court, has considered whether the standard is compatible with Article III of the Constitution.

The arbitrary and capricious standard of review employed by the Courts in ERISA Insurance Cases is unconstitutional because: (a) a litigant has a constitutional right to have her claim decided under this Court's Article III "judicial power;" and (b) deferential

---

[1] *See, e.g., Zuckerbrod v. Phoenix Mut. Life Ins. Co.*, 78 F.3d 46, 49 (2d Cir. 1996) (holding a denial of benefits in an ERISA Insurance Case may only be reversed if the decision was arbitrary or capricious).

[2] Jacoby's request for relief is limited to ERISA Insurance Cases because there are many differences between Insurance Cases and Pensions Cases that could impact the applicability of Article III and Supreme Court precedent.  These differences include the following: (1) Insurance Cases are paid out of the general assets of the insurance company, while Pension Cases are funded out of trust funds; (2) Insurance Cases are decided by insurance companies that have an inherent conflict of interest (being both decider and payor), while Pension Cases are decided by trustees; and (3) Insurance Cases and Pension Cases have different historical contexts and regulatory schemes.

review under the arbitrary and capricious standard impermissibly limits this Court's judicial power.

Accordingly, this Court should: (a) declare the arbitrary and capricious standard of review to be unconstitutional in ERISA Insurance Cases; and (b) grant plaintiff a *de novo* plenary proceeding in the current action.

FACTUAL BACKGROUND

For three years, Hartford found Jacoby "totally disabled" under the terms of Group Policy No. GLT-707637 (the "Policy").  It concluded that Jacoby's symptoms resulting from chronic fatigue syndrome caused her to be occupationally impaired under the Policy.  Then, without a change in her condition, Hartford contended that Jacoby was no longer impaired and unlawfully terminated her benefits prompting this litigation.

The disposition of this litigation, like many other ERISA Insurance Cases, may turn on the standard of review used by the Court.[3]  Although there is overwhelming evidence in the claim record proving that Jacoby is "totally disabled" under the Policy, the standard of review that this Court chooses to decide her claim could impact the final determination.

The Hartford claim file contains objective clinical evidence backed by expert opinions establishing that Jacoby is totally disabled under the Policy as a result of chronic fatigue syndrome and cognitive deficits.  Neuropsychological testing shows that Jacoby has severe deficits in "speed of information processing, visual attention and concentration especially under distracting conditions, working memory, auditory and visual memory and reading comprehension."  SPECT scans of the brain disclose "diffuse heterogeneous hypoperfusion involving the frontal, parietal and temporal lobes."  The pattern of hypoperfusion is consistent with a "variety of encephalopathies, including encephalitis (Lyme Disease, etc.), vasculitis, or chronic medication/drug use."

---

[3] It is anticipated that Hartford will contend that the following Policy language invokes the arbitrary and capricious standard of review: "We have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy."  Riemer Aff., Ex. C, p. 152.

The Hartford claim file also includes the opinions of five treating physicians, including Professor Benjamin Natelson, M.D., Director of the Chronic Fatigue Syndrome/Fibromyalgia Center of the New Jersey Medical School; each examining doctor concluded that Jacoby is completely precluded from working.  Dr. Natelson opines, "[t]his combination of symptoms makes it impossible for her to work, even on a part-time basis."  Their opinions are congruent with the independent evaluation of the Social Security Administration, which found Jacoby to be totally disabled from "any gainful occupation" as of December 20, 2002.

<u>ARGUMENT</u>

I.  JACOBY HAS A CONSTITUTIONAL RIGHT TO HAVE HER
    ERISA INSURANCE CASE, A DISPUTE BETWEEN TWO
    PRIVATE LITIGANTS, DECIDED UNDER THIS COURT'S
    <u>ARTICLE III JUDICIAL POWER</u>

Jacoby has a Constitutional right to have her "private right"[4] to long term

disability benefits adjudicated under the "Judicial Power" of an Article III Court.  To

protect Jacoby's Constitutional right, a *de novo* plenary proceeding before this Court is

required.

The arbitrary and capricious standard of review, which limits this Court's Article

III Judicial Power as described in detail in Point II below, is unconstitutional because

Jacoby's claim to long term disability benefits is a "private right" that must be

adjudicated by an Article III Court.  The two limited exceptions to Article III

adjudication do not apply: Congress did not create an Article I Court or tribunal to decide

ERISA employee benefit disputes; and Jacoby never waived her right to Article III

adjudication.  *See, Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568,

105 S.Ct. 3325 (1985)(*see* Point I(C)(1), below); and *Commodity Futures Trading*

*Commission v. Schor*, 478 U.S. 833, 106 S.Ct. 3245 (1986)(*see* Point I(C)(2), below).

---

[4] *See Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272,
284, 15 L.Ed. 372, 377-378 (1855) (Distinguishing between "private right" requiring
Article III adjudication and the exception for "public rights" which may be resolved by
administrative agencies or Article I Courts.);  Richard H. Fallon, *Of Legislative Courts,*
*Administrative Agencies, and Article III*, 101 Harv. L. Rev. 916 (1988) (concluding that
meaningful judicial review in an Article III court is a necessary and sufficient
requirement under the Constitution).

A.  The Constitution Requires the Adjudication of "Private
Rights" By An Unfettered Article III Court

Article III of the Constitution confers on the federal courts the obligation to

decide "cases" and "controversies."  Article III provides in pertinent part:

> §1.  The judicial Power of the United States, shall be vested
> in one supreme Court, and in such inferior Courts as the
> Congress may from time to time ordain and establish . . .

> §2.  The judicial Power shall extend to all Cases, in Law
> and Equity, arising under . . .  Laws of the United States . . .

This mandate has been followed since *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2

L.Ed. 60 (1803) and was reaffirmed in a series of Supreme Court cases concerning

"private rights" in the 1980s.  In *Commodity Futures Trading Commission v. Schor*, 478

U.S. 833, 850, 105 S.Ct. 3245, 3256 (1986), the Supreme Court stated:

> Article III, *§1*, not only *preserves to litigants their interest in an impartial
> and independent federal adjudication of claims within the judicial power
> of the United States*, but also serves as "an inseparable element of the
> constitutional system of checks and balances." *quoting Northern Pipeline
> Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 58 (1982).

(emphasis added).

Article III restricts Congress from relegating adjudicative functions to non-Article

III courts and tribunals when the dispute is over "private" rather than "public" rights.  As

the Supreme Court confirmed again in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33,

52, 109 S.Ct. 2782, 2795-2796, 106 L.Ed.2d 26, 47 (1989):

> Our prior cases support administrative factfinding in only those situations
> involving 'public rights,' e.g., where the Government is involved in its
> sovereign capacity under an otherwise valid statute creating enforceable
> public rights.  Wholly private tort, contract, and property cases, as well as
> a vast range of other cases, are not at all implicated. [5]

---

[5] Indeed, in his concurring opinion, Justice Scalia indicated that he would hold that public
rights are only those affecting the government.  All other rights are private rights.  He

. . .

> …if a statutory cause of action,…is not a "public right" for Article III purposes, then Congress may not assign its adjudication to a specialized non-Article III court lacking the essential attributes of the judicial power.

The Court continued and explained:

> Although we left the term "public rights" undefined in *Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n, 430 U.S., at 450, 458*, we cited *Crowell v. Benson, 285 U.S. 22 (1932)*, approvingly. In *Crowell*, we defined "private right" as "the liability of one individual to another under the law as defined," *id., at 51*, in contrast to cases that "arise between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments." *Id., at 50*.

492 U.S. 33, 51 n. 8.

Thus, "private rights" must be decided by an Article III Court exercising unimpeded attributes of that Court as Constitutionally required. This means an independent adjudication without deference to one of the parties to that very litigation.

      B.  Jacoby's Insurance Benefits Are "Private rights"
          <u>Requiring Article III Adjudication</u>

A claim for long term disability benefits from a private insurance company is a quintessential "private right." Prior to the enactment of ERISA, employer-provided long term disability insurance claims were adjudicated under state insurance law. When Congress passed ERISA, it effectively "federalized" all private sector employee benefits, including long term disability benefits. In so doing, ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), displaced traditional State causes of action arising under State insurance

---

believes that the exceptions described in *Thomas* and *Schor* are unconstitutional. He states:

> The notion that the power to adjudicate a legal controversy between two private parties may be assigned to a non-Article III, yet federal, tribunal is entirely inconsistent with the origins of the public rights doctrine. The language of Article III itself, of course, admits of no exceptions. . .

492 U.S. 33 at 66.

laws.[6] *See Pilot Life v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549 (1987)(holding state common law causes of action arising from the improper processing of a claim are preempted under ERISA).

Because Jacoby's litigation against Hartford arises from a private property dispute that, prior to the passage of ERISA, was historically resolved under State laws, her claim is one that requires Article III resolution. As the Supreme Court in *Thomas* reiterated:

> Most importantly, the statute in *Crowell* displaced a traditional cause of action and affected a pre-existing relationship based on a common-law contract for hire. Thus it clearly fell within the range of matters reserved to Article III courts under the holding of Northern Pipeline. See 458 U.S., at 70-71, and n. 25 (plurality opinion) (noting that matters subject to a "suit at common law or in equity or admiralty" are at "protected core" of Article III judicial powers); id. at 90 (opinion concurring in judgment) (noting that state law contract actions are "the stuff of the traditional actions at common law tried by the courts at Westminster in 1789").

*Thomas*, 473 U.S. 568 at 587.

Jacoby's dispute with Hartford is over private property—insurance payments. As the contest is purely between two private litigants, and no government benefit is involved, under Supreme Court precedent, Jacoby must be afforded a full Article III adjudication. To protect Jacoby's Constitutional right to Article III decision making, her claim must be decided by an independent Article III Court that does not give deference to a pre-litigation determination by Hartford. To do otherwise results in the Article III Court ceding its Constitutional requirement to decide "Cases" and "Controversies" to the defendant and deprives Jacoby of her right to impartial adjudication.

---

[6] State insurance law is not entirely displaced. ERISA §514(b)(1), 29 U.S.C. §1144(b)(1) saves certain insurance law from federal preemption in connection with fully insured ERISA plans.

C.  The Two Limited Exceptions Specified in
*Thomas* and *Schor* are Inapplicable

There are two limited instances in which Congress can relegate adjudicative

authority of "private rights" for resolution by a non-Article III court or tribunal.  Neither

exception is applicable in the context of an ERISA Insurance Case.

1.  The Regulatory Exception Enunciated In *Thomas* Is Inapplicable

The *Thomas* exception only applies in very limited circumstances.  In *Thomas*, the

Supreme Court permitted an Article I arbitration adjudication, subject to judicial review

only for fraud, misrepresentation, or other misconduct, because: (1) the right created by

the Federal Insecticide, Fungicide, and Rodenticide Act as to the use of a registrant's data

is not a purely "private" right, but bears many of the characteristics of a "public" right; (2)

the arbitration scheme is necessary as a pragmatic solution to the difficult problem of

spreading the costs of generating adequate information regarding the safety, health, and

environmental impact of a potentially dangerous product; and (3) the scheme contains its

own sanctions and subjects no unwilling defendant to judicial enforcement power.  Given

the nature of the right at issue and the concerns motivating Congress, the Supreme Court

held that the Article I adjudication did not violate Article III.  473 U.S. 568 at 590.

On its face, the *Thomas* exception is inapplicable to the current case because

Congress did not even create an Article I Court or tribunal (including a private insurance

company) to decide employee benefit disputes arising under ERISA.  *See, e.g.*, *Downs v.*

*Liberty Life Ass. Co. of Boston*, 2005 U.S. Dist. LEXIS 22531, *19 (N.D. Tex. Oct. 5,

2005)(". . . Congress did not delegate any adjudicative authority to employers or plan

administrators when enacting ERISA . . ."); *Black v. UNUMProvident Corp.*, 245

F.Supp.2d 194, 199 (D.Me. 2003)("ERISA does not delegate any adjudicative functions

9

to an otherwise private party."). Thus, there is <u>no</u> *Thomas*-like relegation to an

administrative agency or legislative Article I tribunal. Indeed, just the opposite is true.

     The text of ERISA provides claimants with full and unimpeded access to the

"Judicial Power" of the Federal courts.

> It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries … *by providing for appropriate remedies, sanctions, and ready access to the Federal courts*. (ERISA §2(b), 29 U.S.C. §1001(b)(emphasis added)).
>
>    . . .
>
> A *civil action* may be brought-- (1) by a participant or beneficiary— (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. (ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(b)(emphasis added)).
>
>    . . .
>
> Except for *actions* under subsection (a)(1)(B) of this section, *the district courts of the United States shall have exclusive jurisdiction of civil actions* under this title brought by the Secretary or by a participant, beneficiary, fiduciary . . . (ERISA §502(e)(1), 29 U.S.C. §1132(e)(1)(emphasis added)).
>
>    . . .
>
> The *district courts of the United States shall have jurisdiction*, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action. (ERISA §502(f), 29 U.S.C. §1132(f)(emphasis added).

     Likewise, the legislative history unambiguously supports the right to Article III

adjudication. In early drafts of ERISA, Congress considered creating an Article I

tribunal, *i.e*., a grievance or arbitration proceeding before the Secretary of Labor[7] to

resolve disputes. The final bill, however, did not contain either of these proposals.

Rather, it unambiguously provides for a private right of action in the District Courts.

---

[7] *See* S. Report 93-383, reprinted in 1974 U.S. Code Cong. & Admin. News 5000 ("the opportunity to resolve any controversy over [ ] retirement benefits under qualified plans in an inexpensive and expeditious manner . . . Accordingly, the committee has decided to provide that controversies as to retirement benefits are to be heard by the Department of Labor.").

(ERISA §502(e)(1), 29 U.S.C. §1132(e)(1)).  The fact that Congress considered and then purposefully rejected an Article I tribunal is conclusive evidence that Congress did not intend to limit the Article III rights of claimants.[8]  The mere fact that the United States Department of Labor regulates certain aspects of ERISA is not sufficient to conclude that Congress intended to limit the manner in which Article III Courts could decide employee benefit claims.

The judicially-created arbitrary and capricious standard of review, which limits meaningful Article III adjudication by deferring to the insurance company's decision, contradicts ERISA §502, 29 U.S.C. §1132.  That section provides subject matter jurisdiction in the District Courts under (e)(1) and a private right of action set forth in (a)(1)(B).  Because the text and legislative history of ERISA are so clear, the Courts are not free to "legislate" a different regime.  Therefore, Jacoby has a right under ERISA and the Constitution to an Article III plenary proceeding.

---

[8] The Supreme Court has indicated that ERISA is a comprehensive and reticulated statute, and that Courts should be reluctant to tamper with ERISA's enforcement scheme:

> We have observed repeatedly that ERISA is a . . . comprehensive and reticulated statute, . . . the product of a decade of congressional study of the Nation's private employee benefit system.  We have therefore been especially reluctant to tamper with [the] enforcement scheme embodied in the statute by extending remedies not specifically authorized by its text.  Indeed, we have noted that ERISA's carefully crafted and detailed enforcement scheme provides strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209, 122 S.Ct. 708, 712 (2002)(citations omitted).  Accordingly, Courts should be very reluctant to create a non-Article III Court or tribunal that Congress did not expressly authorize.

2. <u>The Waiver Exception Enunciated In *Schor* Is Inapplicable</u>

"Article III's guarantee of an impartial and independent federal adjudication is subject to waiver, just as are other personal constitutional rights that dictate the procedures by which civil and criminal matters must be tried." *Commodity Futures Trading Commission v. Schor*, 478 U.S. 833, 848-849, 106 S.Ct. 3245, 3255, 92 L.Ed.2d 675, 690-691 (1986). These rights, however, cannot be waived haphazardly, but rather must be done in a voluntarily, knowing and intelligent manner. *See e.g., Adams v. United States ex rel. McCann,* 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942) (waiver of right to jury trial).

The *Schor* waiver exception cannot justify deference to a private insurance company because: (1) there is no evidence that Congress intended to establish a method under which a claimant could waive her Article III rights; and (2) there has been no waiver by Jacoby.

        a.   There is No Evidence that Congress Intended to
            Establish a Regime by which a Claimant Could
            <u>Waive Article III Rights</u>

In *Schor*, Congress specifically established an Article I tribunal under which a claimant could voluntarily assert a claim. 478 U.S. 833 at 855 ("Congress gave the CFTC the authority to adjudicate such matters, but the decision to invoke this forum is left entirely to the parties . . ."). ERISA is different. Neither the ERISA statute, nor its legislative history contain any language establishing an Article I tribunal at the Department of Labor or otherwise. Moreover, neither the ERISA statute, nor its legislative history, contain any language establishing a waiver scheme under which a

claimant may voluntarily waive her right to an Article III proceeding in favor of a deferential review under the arbitrary and capricious standard.

    b.    Jacoby Did Not Waive Her Right To Article III Adjudication

Hartford can establish no waiver on the part of Jacoby. There is no document signed by Jacoby waiving her right to a plenary proceeding in an Article III Court. This is in stark contrast to *Schor*, where there was no dispute that the plaintiff voluntarily brought a state law counterclaim before the Commodity Futures Trading Commission ("CFTC"). *See Schor*, 478 U.S. 833 at 838. By voluntarily asserting a counterclaim before the CFTC, rather than filing a separate action in a United States District Court, the Supreme Court concluded that the plaintiff in *Schor* waived his Constitutional rights.

Moreover, no argument could be made that Jacoby meaningfully waived her Article III rights by the mere fact that she voluntarily enrolled as a plan participant under the Policy. When Jacoby paid the premium under the Policy, she was not given an option to elect coverage subject to a *de novo* proceeding versus coverage subject to the arbitrary and capricious standard of review. Nor was she provided with a document explaining her Constitutional rights afforded under Article III and what the consequence of waiving those rights might be.

II.   DEFERENTIAL REVIEW UNDER THE ARBITRARY AND
      CAPRICIOUS STANDARD IMPERMISSIBLY LIMITS THIS
      COURT'S ARTICLE III JUDICIAL POWER

       With the credo that federal courts are "not free to substitute [their] judgment for

that of the [plan administrator],"[9] the Second Circuit has created a standard for ERISA

Insurance Cases that: provides a "review" instead of a plenary proceeding;[10] restricts the

scope of review to the "administrative record;"[11] and severely limits plaintiff's right to

discovery.[12]

       The Second Circuit outlines the arbitrary and capricious standard in *Peterson v.*

*Continental Cas. Co.*, 282 F.3d 112, 117 (2d Cir. 2002):

_____

[9] *See, e.g., Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995).  Relying on *Perry v. Simplicity Eng'g, Div. of Lukens Gen. Indus*., 900 F.2d 963, 966-967 (6th Cir. 1990), the Second Circuit in *Miller* and other cases has justified the limitations of the arbitrary and capricious standard of review as a way to avoid being "substitute plan administrators" and as a way to promote in the words of *Perry*, "[a] primary goal of ERISA . . . to resolve disputes over benefits inexpensively and expeditiously."  900 F.2d 963 at 967.  Unfortunately, this is one of the most grievous errors in modern jurisprudence.  *Perry* cites as its sole support, 1974 U.S. Code Cong. & Admin. News 5000, but this is a cite to the portion of the Senate Report 93-383, which describes the proposed grievance procedure before the Department of Labor (described in Section I(C)(1) above) that never became law.  It, therefore, is not reflective of ERISA's purpose.  Indeed, ERISA §2, 29 U.S.C. §1001, specifically describes the policy behind ERISA and there is no reference whatsoever to courts avoiding being substitute plan administrators and promoting expeditious resolution of claims.  On the contrary, the express policy behind ERISA was to protect employee benefits, to establish standards of conduct and to provide ready access to the federal courts.

[10] *See, e.g., Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995)(a determination of a plan administrator will be overturned only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law.").

[11] *See, e.g., Miller*, 72 F.3d 1066 at 1071 ("a district court's review under the arbitrary and capricious standard is limited to the administrative record.").

[12] The Second Circuit has not yet addressed discovery in ERISA Insurance Cases, but many District Courts within the Circuit have restricted discovery.  *See, e.g., Lane v. Hartford Life and Accident Ins. Co.*, 2006 U.S. Dist. LEXIS 83205, *4-6 (S.D.N.Y. Nov. 14, 2006); *Samedy v. First UNUM Life Ins. Co. of Am.*, 2006 U.S. Dist. LEXIS 13375, *4-9 (E.D.N.Y. Mar. 10, 2006).

It is well established that federal courts have a narrow role in reviewing the discretionary acts of ERISA plan administrators. *See, e.g.*, *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 443 (2d Cir. 1995). ERISA empowers federal courts to review the decisions of plan administrators, but provides no authority for a court to render a *de novo* determination of an employee's eligibility for benefits. *See Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995) ("Nothing in the legislative history suggests that Congress intended that federal district courts would function as substitute plan administrators . . . .") (internal quotation marks omitted); *Pagan*, 52 F.3d at 442 (stating that federal courts are "not free to substitute [their] judgment for that of the [plan administrator]"). Therefore, absent a determination by the plan administrator, federal courts are without jurisdiction to adjudicate whether an employee is eligible for benefits under an ERISA plan. *See Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 140-41 (2d Cir. 2000).

The arbitrary and capricious standard of review in an ERISA Insurance Case[13] denies a litigant her right to an impartial and independent Article III adjudication.[14]

First, by holding that the Court cannot substitute its own judgment for that of an ERISA Insurance administrator, the Court impermissibly is curtailing its own judicial power. In effect, the Court is making its own judgment subservient to the judgment of a private party. This directly contradicts the purpose of ERISA—the protection of employee benefits from abuses. The statute was not created to insulate insurance companies from litigation. ERISA provides:

It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and

---

[13] The Second Circuit has applied the arbitrary and capricious standard of review to ERISA Insurance Cases starting in *Zuckerbrod v. Phoenix Mut. Life Ins. Co.*, 78 F.3d 46, 49 (2d Cir. 1996). The Second Circuit, however, has never addressed whether the standard is appropriate in ERISA Insurance Cases given the imperative described in *Firestone* (that beneficiaries should not be afforded less protection than they had prior to ERISA) and given the fact that an ERISA Insurance Case has a contractual basis instead of a trust basis.

[14] Neither the Supreme Court, nor the Second Circuit has ever considered whether the arbitrary and capricious standard of review is compatible with Article III.

> beneficiaries of financial and other information with
> respect thereto, by establishing standards of conduct,
> responsibility, and obligation for fiduciaries of employee
> benefit plans, and by providing for appropriate remedies,
> sanctions, and ready access to the Federal courts.

(ERISA §2, 29 U.S.C. §1001(b)).

Second, Article III claimants are entitled to an "impartial and independent federal adjudication." By deferring to the ERISA Insurance administrator, who, in this case, is a for-profit insurance company with an inherent conflict of interest (being both decider and payor), the Court is depriving Jacoby of an impartial and independent federal adjudication.

Third, Article III requires the adjudication of "cases or controversies," which are uniformly entitled to the protections of the Federal Rules of Civil Procedure.[15] Under the arbitrary and capricious standard, ERISA Insurance claimants are routinely deprived of fundamental procedural protections, including:

- The right to conduct meaningful discovery. Courts often prohibit even limited discovery by analogizing an ERISA Insurance Claim to a review of an agency determination. *See, e.g., Lane v. Hartford Life and Accident Ins. Co.*, 2006 U.S. Dist. LEXIS 83205, *4-6 (S.D.N.Y. Nov. 14, 2006). Others permit propounding very limited interrogatories or document requests or taking depositions limited to "conflict of interest" issues. *See, e.g.*, *Samedy v. First*

---

[15] Rule 1 of the Federal Rules of Civil Procedure provides:
> These rules govern the procedure in the United States district courts in all suits of
> a civil nature whether cognizable as cases at law or in equity or in admiralty, with
> the exceptions stated in Rule 81. They shall be construed and administered to
> secure the just, speedy, and inexpensive determination of every action.

Neither Rule 81, nor any other federal rule, contains an exception for employee benefit claims under ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B).

*UNUM Life Ins. Co. of Am.*, 2006 U.S. Dist. LEXIS 13375, *4-9 (E.D.N.Y. Mar. 10, 2006).

- The right to present additional evidence. Courts restrict the evidence available for the Court's review to the administrative record. *See, e.g.*, *Miller*, 72 F.3d 1066 at 1071.

- The right to cross-examine witnesses. Claimants are not given the opportunity to cross-examine insurance company retained consultants even though their reports are often the prime piece of evidence relied upon by the insurance company in denying benefits. *See, e.g.*, *Miller*, 72 F.3d 1066 at 1071-1072 (no trial permitted).

- Despite the absence of an authorizing provision in either ERISA or the Federal Rules, cases are remanded back to the plan administrator for additional consideration if the administrative record is incomplete. The Courts refuse to engage in their own fact finding. *See, e.g., Miller,* 72 F.3d 1066 at 1073-1074.

- The Federal Rules of Evidence are relaxed. Courts admit into evidence the entire administrative record, which often contains: hearsay statements; unauthenticated video surveillance and reports of outside investigators; and unreliable expert opinion that fails to satisfy the minimum standards of Rule 702 and *Daubert*. ERISA plaintiffs are then not permitted to contest this "evidence" with the tools of discovery and cross-examination. *See, e.g.*, *Miller*, 72 F.3d 1066 at 1071-1072 (no trial permitted).

17

Thus, the Second Circuit's application of the arbitrary and capricious standard of review in ERISA Insurance Cases violates Article III.

This Constitutional violation cannot be excused by citation to *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109, 109 S.Ct. 948, 953-954, 103 L.Ed.2d 80 (1989).[16]  *Firestone* never considered the applicability of Article III.  Moreover, in *Firestone*, the Supreme Court did not evaluate or consider the significant differences between a fully insured welfare benefit plan and a fully funded or unfunded trust.  Rather, the three plans litigated before the Court were: (1) an unfunded termination pay plan; (2) an unfunded stock purchase plan; and (3) an unfunded pension plan.  "Firestone was the sole source of funding for the plans and had not established separate trust funds out of which to pay the benefits from the plans."  *Id.* at 105.  *Firestone* specified that its holding applied regardless of whether a plan was "funded or unfunded," 489 U.S. 101 at 109, but did not specify that it applied to insured plans.

There is no reason to presume that this was an inadvertent omission.  In *Firestone*, the Supreme Court recognized the imperative of not applying a standard of review that "would afford less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted."  489 U.S. 101 at 114.  Applying the arbitrary and capricious

---

[16] The Supreme Court held the appropriate standard of review was *de novo,* but then, in *dicta,* stated:

> Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard *unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.*

(emphasis added).  The quoted language is *dicta* because none of the plans at issue in the *Firestone* case had language granting the plan administrator or fiduciary discretionary authority.  The language is, therefore, not necessary to the holding.  Seizing on this *dicta*, insurance companies have readily amended their policies to include grants of discretionary authority, making the vast majority of welfare benefit claims subject to the arbitrary and capricious standard of review.

standard of review to ERISA Insurance Cases undermines the protection of employees for the benefit of an insurance company.  Historically, insurance claims have always been treated as plenary proceedings in Court.[17]  Certainly, Congress did not intend for ERISA to make it easier for insurance companies to deny benefits to private sector employees.

Since *Firestone*, the case for applying the arbitrary and capricious standard of review to ERISA Insurance Cases has become even more attenuated.  In *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 384 n.15, 385, 122 S.Ct. 2151, 2169-2170 (2002), the Supreme Court questioned the efficacy of a deferential standard when there is a conflict of interest (as in the case of an insurance company that serves as both decider and payor of benefits).  The Supreme Court stated:

> In *Firestone Tire* itself, we noted that review for abuse of discretion would home in on any conflict of interest on the plan fiduciary's part, if a conflict was plausibly raised.  That last observation was underscored only two Terms ago in *Pegram v. Herdrich*, 530 U.S. 211, 147 L. Ed. 2d 164, 120 S.Ct. 2143 (2000), when we again noted the potential for conflict when an HMO makes decisions about appropriate treatment, see id., at 219-220.  *It is a fair question just how deferential the review can be when the judicial eye is peeled for conflict of interest.*
> . . .
> [ERISA] requires plans to afford a beneficiary some mechanism for internal review of a benefit denial, 29 U.S.C. § 1133(2), and provides a right to a subsequent judicial forum for a claim to recover benefits, §1132(a)(1)(B).  Whatever the standards for reviewing benefit denials may be, they cannot conflict with anything in the text of the statute, which we have read to require a uniform judicial regime of categories of relief and standards of primary conduct, *not a uniformly lenient regime of reviewing benefit determinations.* [citation omitted]..

---

[17]  The arbitrary and capricious standard of review creates a total reversal of the traditional presumptions in insurance cases.  Under the arbitrary and capricious standard of review, deference is granted to the interpretation of the insurance company.  Under traditional insurance law, ambiguities in insurance policies are interpreted against the insurance company under the doctrine of *contra proferentem*.  *See, Pagan*, 52 F.3d 438 at 443.

(emphasis added). Despite this admonition, the Second Circuit's standard has remained "uniformly lenient" and ERISA plaintiffs have suffered as a result.

<u>Conclusion</u>

For the reasons specified above, this Court should: (a) declare the arbitrary and capricious standard of review to be unconstitutional in ERISA Insurance Cases; and (b) grant plaintiff a *de novo* plenary proceeding in the current action.

Dated: February 5, 2008

RIEMER & ASSOCIATES LLC
Attorneys for Plaintiff
60 East 42nd Street, Suite 2430
New York, New York 10165
(212) 297-0700

By:_____/s/_____
Scott M. Riemer (SR5005)

PHILLIPS & ANGLEY
Attorneys for Plaintiff
One Bowdoin Square
Boston, MA 02114
(617) 227-8787

By:_____/s/_____
Jonathan Feigenbaum (JF7310)

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I am attorney for Plaintiff and that on February 5, 2008, I caused to be served by Electronic Filing and first class mail true and correct copies of: (a) Plaintiff's Notice of Motion; (b) Affirmation of Scott M. Riemer, with exhibits thereto; and (c) Memorandum Of Law In Support Of Plaintiff's Motion To Declare Unconstitutional The Arbitrary And Capricious Standard Of Review And To Grant Plaintiff A De Novo Plenary Proceeding, to the following:

TO:    Christina Bost Seaton, Esq.
       Troutman Sanders LLP
       405 Lexington Avenue
       New York, NY  10174
       212-704-6440

Dated: New York, New York
       February 5, 2008

                                    _____/s/_____
                                    SCOTT M. RIEMER (SR5005)
                                    60 East 42nd Street, Suite 2430
                                    New York, New York  10165
                                    (212) 297-0700