

TROUTMAN SANDERS LLP
Christina H. Bost Seaton (CB-7667)
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 704-6000
*Attorneys for Defendant*
*Hartford Life and Accident Insurance Company*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

JULIE JACOBY,

               Plaintiff,

    -against-

HARTFORD LIFE AND ACCIDENT INSURANCE
COMPANY,

               Defendant.

----------------------------------------------------------------X

No.: 07 Civ. 4627 (LAK) (RLE)

**JOINT PRETRIAL ORDER**

       The parties having conferred among themselves and with the Court pursuant to Fed. R. Civ. P. 16, the following statements, directions and agreements are adopted as the Pretrial Order herein.

       I.    **NATURE OF THE CASE**

       Plaintiff Julie Jacoby ("Jacoby") filed this suit arising out of the denial of her claim for long term disability benefits under an employee welfare benefit plan ("the Plan") sponsored by her employer and insured by Hartford. Jacoby's claim is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, *et seq*. The parties disagree as to the appropriate standard of review to be employed by the Court. Jacoby contends that the proper standard of review is *de novo*. Defendant contends that the Court must determine whether Hartford's decision to deny Jacoby's claim for disability benefits was

arbitrary and capricious, meaning that it was made without reason, was unsupported by substantial evidence or was erroneous as a matter of law.

## II. JURY/NON-JURY

Non-Jury.

## III. STIPULATED FACTS

None.

## IV. PARTIES' CONTENTIONS

The pleadings are deemed amended to embrace the following, and only the following, contentions of the parties:

### A. Plaintiff's Contentions

1. The Court should apply a *de novo* standard of review. Hartford has the burden of establishing that the arbitrary and capricious standard of review applies. *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F 3d 243, 249 (2d Cir. 1999). Hartford cannot satisfy its burden because the arbitrary and capricious standard of review is unconstitutional in the context of the fully-insured plan in the present case.

The arbitrary and capricious standard of review is unconstitutional because it deprives Jacoby of her right to an impartial and independent Article III adjudication. It does this by restricting the Judicial Power of this Court, *i.e.*, requiring the Court to defer to the pre-litigation determination of a private party insurance company and, in essence, transforming the plaintiff's "civil action" into a review proceeding.

Jacoby's claim to long term disability benefits is a quintessential "private right"[1] that must be adjudicated under the "Judicial Power" of an Article III Court. As the Supreme Court held in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52, 109 S.Ct. 2782, 2795-2796, 106 L.Ed.2d 26, 47 (1989):

> Our prior cases support administrative factfinding in only those situations involving 'public rights,' e.g., where the Government is involved in its sovereign capacity under an otherwise valid statute creating enforceable public rights. Wholly private tort, contract, and property cases, as well as a vast range of other cases, are not at all implicated.
>
> . . .
> . . . f a statutory cause of action,...is not a "public right" for Article III purposes, then Congress may not assign its adjudication to a specialized non-Article III court lacking the essential attributes of the judicial power.

The two limited exceptions to Article III adjudication do not apply: Congress did not create an Article I Court or tribunal to decide ERISA employee benefit disputes; and Jacoby never waived her right to Article III adjudication. *See, Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 105 S.Ct. 3325 (1985) and *Commodity Futures Trading Commission v. Schor*, 478 U.S. 833, 106 S.Ct. 3245 (1986).

The *Thomas* exception only applies in very limited circumstances. In *Thomas*, the Supreme Court permitted an Article I arbitration adjudication, subject to judicial review only for fraud, misrepresentation, or other misconduct, because: (1) the right created by the Federal Insecticide, Fungicide, and Rodenticide Act as to the use of a registrant's data is not a purely "private" right, but rather bears many of the characteristics of a "public" right; (2) the arbitration scheme is necessary as a pragmatic solution to the difficult problem of spreading the costs of

---

[1] *See Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272, 284, 15 L.Ed. 372, 377-378 (1855) (Distinguishing between "private right" requiring Article III adjudication and the exception for "public rights" which may be resolved by administrative agencies or Article I Courts.); Richard H. Fallon, *Of Legislative Courts, Administrative Agencies, and Article III*, 101 Harv. L. Rev. 916 (1988) (concluding that meaningful judicial review in an Article III court is a necessary and sufficient requirement under the Constitution).

generating adequate information regarding the safety, health and environmental impact of a potentially dangerous product; and (3) the scheme contains its own sanctions and subjects no unwilling defendant to judicial enforcement power.  Given the nature of the right at issue and the concerns motivating Congress, the Supreme Court held that the Article I adjudication did not violate Article III.  473 U.S. 568 at 590.

On its face, the *Thomas* exception is inapplicable to the current case because Congress did not even create an Article I Court or tribunal (including a private insurance company) to decide employee benefit disputes arising under ERISA. *See, e.g., Downs v. Liberty Life Ass. Co. of Boston*, 2005 U.S. Dist. LEXIS 22531, *19 (N.D. Tex. 2005) ("... Congress did not delegate any adjudicative authority to employers or plan administrators when enacting ERISA ..."); *Black v. UNUMProvident Corp.*, 245 F.Supp.2d 194, 199 (D.Me. 2003) ("ERISA does not delegate any adjudicative functions to an otherwise private party."). Thus, there is no *Thomas*-like relegation to an administrative agency or legislative Article I tribunal.

Hartford also cannot invoke the *Schor* waiver exception.  First, there is no evidence that, in enacting ERISA, Congress intended to establish a method under which a claimant could waive her Article III rights.  Second, there has been no waiver by Jacoby.  There is no document signed by Jacoby waiving her right to a plenary proceeding in an Article III Court.  Moreover, no argument can be made that Jacoby meaningfully waived her Article III rights by the mere fact that she voluntarily enrolled as a plan participant under the Policy.  When Jacoby paid the premium under the Policy, she was not given an option to elect coverage subject to a *de novo* proceeding versus coverage subject to the arbitrary and capricious standard of review.  Nor was she provided with a document explaining her Constitutional rights afforded under Article III and what the consequence of waiving those rights might be.

This Constitutional violation cannot be excused by citation to *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109, 109 S.Ct. 948, 953-954, 103 L.Ed.2d 80 (1989).[2] *Firestone* never considered the applicability of Article III. Moreover, in *Firestone*, the Supreme Court did not evaluate or consider the significant differences between a fully-insured welfare benefit plan and a fully-funded or unfunded trust. Rather, the three plans litigated before the Court were: (1) an unfunded termination pay plan; (2) an unfunded stock purchase plan; and (3) an unfunded pension plan. "Firestone was the sole source of funding for the plans and had not established separate trust funds out of which to pay the benefits from the plans." *Id.* at 105. *Firestone* specified that its holding applied regardless of whether a plan was "funded or unfunded," 489 U.S. 101 at 109, <u>but did not specify that it applied to insured plans</u>.

There is no reason to presume that this was an inadvertent omission. In *Firestone*, the Supreme Court recognized the imperative of not applying a standard of review that "would afford less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted." 489 U.S. 101 at 114. Applying the arbitrary and capricious standard of review to ERISA insurance cases undermines the protection of employees for the benefit of an insurance company. Historically, insurance claims have always been treated as plenary proceedings in

---

[2] The Supreme Court held the appropriate standard of review was *de novo*, but then, in *dicta*, stated:

> Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard *unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.*

(emphasis added). The quoted language is *dicta* because none of the plans at issue in the *Firestone* case had language granting the plan administrator or fiduciary discretionary authority. The language is, therefore, not necessary to the holding. Seizing on this *dicta*, insurance companies have readily amended their policies to include grants of discretionary authority, making the vast majority of welfare benefit claims subject to the arbitrary and capricious standard of review.

Court.[3] Certainly, Congress did not intend for ERISA to make it easier for insurance companies to deny benefits to private sector employees.

2.  Plaintiff should prevail under a *de novo* standard of review. Under a *de novo* review, a preponderance of the evidence establishes that, on and after June 20, 2006, plaintiff is totally disabled from any occupation to which she is qualified for by reason of education, training or experience.

The record contains substantial evidence establishing plaintiff's claim of disability, including the following:

a.  Five medical doctors and two neuropsychologists opine that Jacoby is totally disabled. They are: (i) Dr. Anna Rosen Noran, Ph.D., Director of Winthrop Psychological Services (HAR 00006); (ii) Leo J. Shea III, Ph.D., Clinical Psychologist/Neuropsychologist, Clinical Assistant Professor of Rehabilitation Medicine, New York University School of Medicine (HAR 00008); (iii) Susan Levine, M.D., Board Certified in Internal Medicine and Infectious Diseases (HAR 00007, 00008, 00679-682); (iv) Ritchie C. Shoemaker, M.D., P.A. of Maryland's Chronic Fatigue Center (HAR 00008, 274-282); (v) Benjamin H. Natelson, M.D., Director of the NJ CFS/FM Center and Principal Investigator for the national CFS/FM Center grant from the National Institute of Immunology and Infectious Diseases (NIAID) that funds the Center's research branch (HAR 00008, 383-384); (vi) Richard N. Podell, M.D. (HAR 00008) ; and (vii) Derek Enlander, M.D. (HAR 00008).

---

[3] The arbitrary and capricious standard of review creates a total reversal of the traditional presumptions in insurance cases. Under the arbitrary and capricious standard of review, deference is granted to the interpretation of the insurance company. Under traditional insurance law, ambiguities in insurance policies are interpreted against the insurance company under the doctrine of *contra proferentem*. See, *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 443 (2d Cir. 1995).

      b.      Abnormal SPECT scans of the brain. The 2002 brain scan documents mild to moderate diffuse heterogeneous hypoperfusion involving the frontal, parietal and temporal lobes. The 2004 brain scan documents moderate patchy abnormal decreased activity involving the parietal lobes bilaterally. (HAR 00005, 00009, 00368, 00370). The brain scans corroborate the diagnosis of chronic fatigue syndrome.

      c.      Abnormal neuropsychological testing. The testing documents a significant decline in cognitive functioning consistent with a diagnosis of chronic fatigue syndrome and the results of the brain SPECT scans and MRI's. (HAR 00006; HAR 00222-00237). The testing objectively establishes that, for cognitive reasons alone, Jacoby is unable to perform the duties of any occupation for which she is qualified by education, training or experience.

      d.      Mental Impairment Questionnaire. The questionnaire, completed by Dr. Anna Rosen Noran on September 23, 2003, documents cognitive impairments consistent with a diagnosis of CFS. (HAR 00086, 001030). In approving Jacoby's application for long term disability benefits in September 2003, Hartford's Claim Examiner, William Conklin, relies in large part on Dr. Rosen Noran's report. (HAR 00124)

      e.      Abnormal MRI's. Two MRI's of the brain performed in 2002 and 2003 show a 10 mm abnormal hyperintense signal focus in the right periatrial white matter. An MRI performed in 2004 shows a 6 mm pineal cyst and a nonspecific right periventricular white matter lesion. (HAR 00005, 00008-00009, 00367).

      f.      Abnormal Tilt Table Study. The Tilt Table Study demonstrates a vasovagal response to upright tilt with the administration of Isoproterenol. (HAR 00004, 00008, 00372-00373).

   g. Abnormal blood/lab work. (HAR 00288-00296). Blood work and other laboratory tests show levels of RNase-L more than four times normal (HAR 00274), positive titers for HHV-6 (HAR 00274), increased ratio of HLA DR 4-3-53 (HAR 00277), no detectable alpha melanocyte stimulating hormone (MSH) (HAR 00277), blunted growth hormone response (HAR 00362), low IgG subclass 1 (HAR 00383), vasoactive intestinal polypeptide (VIP) too low to measure (HAR 00277), mismatching of VEGF to erythropoietin (HAR 00277) and elevated C4a (HAR 00277). These marked abnormalities in innate immune responses are consistent with chronic fatigue syndrome. (HAR 00275).

   h. Cardiopulmonary exercise test. (HAR 00374-00377). The test shows significant reduction in anaerobic threshold which is typical of patients who are disabled from CFS. (HAR 00333).

   i. Abnormal MRI of spine. The MRI shows small focal midline disc protrusion at L4-L5, mild diffuse bulge at the L5-S1 annulous fibrosus and generative disc disease at LF-5 and L5-S1. (HAR 00006).

   j. Social Security Determination. The Social Security Administration determined that Jacoby is disabled from working in any occupation and has paid benefits to her since December 2002. (HAR 01047-01050)

   B. <u>Defendant's Contentions</u>

   Jacoby was employed as an Executive Assistant for GSCP (NJ) LP ("GSCP"), an investment firm located in Florham Park, New Jersey. Jacoby claims she suffers from a variety of subjective and/or self-reported physical symptoms, such as fatigue, weakness, pain, and cognitive difficulties, that she has diagnoses of chronic fatigue syndrome and fibromyalgia, and that these conditions render her completely disabled from working in any job. Through her

-8-

employment with GSCP, Jacoby was a participant in a long term disability insurance policy which was issued by Hartford to GSCP and was part of an employee welfare benefit plan.

Jacoby stopped working on December 20, 2002 due primarily to her claims of extreme fatigue. Jacoby was then diagnosed with chronic fatigue syndrome by her treating internist, Dr. Susan Levine. Hartford awarded Ms. Jacoby long term disability benefits during the 36-month "own occupation period," finding her totally disabled from performing the duties of her regular position as an Executive Assistant. Ms. Jacoby received net benefits from Hartford in the amount of approximately $1,100 per month during the period from June 21, 2003 to June 20, 2006.

In 2006, at the conclusion of the three-year "own occupation" period, Hartford began to evaluate Jacoby's eligibility for continuing long term disability benefits under the "any occupation standard." Under the "Any Occupation" provision of the Plan, Jacoby had the burden to prove that she was unable to perform the essential duties of *any occupation* for which she is qualified by education, training or experience. Jacoby's claim for continuing long term disability benefits were denied because Hartford determined, based on the medical and surveillance evidence in the file, that Jacoby was capable of performing sedentary work and therefore she was not totally disabled from performing the essential duties of "any occupation," including her occupation as an Executive Assistant.

Following an administrative appeal, Jacoby filed this lawsuit under ERISA based on Hartford's denial of her claim for continuing disability benefits. The Plan provides Hartford with complete discretion to determine a claimant's eligibility for benefits. Therefore, Hartford's decision to deny Jacoby's claim is governed by an arbitrary and capricious standard of review. The substantial evidence in the administrative record, including opinions from four independent

medical examiners and the level of Jacoby's physical activities as captured on surveillance video, demonstrated that Jacoby was not disabled under the terms of the Plan. Moreover, Jacoby's activities on the video surveillance were markedly inconsistent with the descriptions given by her and her doctors regarding her restrictions and limitations. Hartford's decision to deny Jacoby's claim for continuing long term disability benefits was reasonable, supported by substantial evidence, and was not arbitrary or capricious. As further identification of Hartford's contentions, Hartford incorporates herein its statement of facts and legal arguments from its memorandum in support of its motion for summary judgment filed on March 11, 2008 and any reply memoranda to be filed.

## V. ISSUES TO BE TRIED

A. *Plaintiff:* Whether a preponderance of the evidence establishes that, on and after June 20, 2006, Jacoby was and continues to be totally disabled within the meaning of the Plan.

B. *Defendant:* The triable issue as contended by the Defendant is whether Hartford Life and Accident Insurance Company abused its discretion and acted arbitrarily and capriciously in denying Jacoby's claim for long term disability benefits.

## VI. PLAINTIFF'S EXHIBITS

1. Complaint
2. Answer
3. Objections and Responses to Interrogatories by Defendant dated February 11, 2008.
4. Responses to Request for Production of Documents by Defendant dated February 11, 2008.

Plaintiff also will rely on her medical records contained within Hartford's claim file. Plaintiff stipulates that the copies of her medical records in Hartford's file are authentic and admissible.

## VII. DEFENDANT'S EXHIBITS

No exhibit not listed below may be used at trial except (a) for cross examination purposes or (b) if good cause for its exclusion from the pretrial order is shown.

1. The administrative record, which has been previously filed with the Court under seal and which consists of documents bates numbered HAR001 through HAR1360, HAR SIU001-172, HAR POLICY 001-047, and HARTFORD WOP 0001-313, as well as the surveillance video and the curriculum vita of Dr. William Sniger, Dr. Richard Levy, Dr. Pedro Garrido-Castillo and Dr. Jerome Siegel.

## VIII. OBJECTIONS WITH RESPECT TO EXHIBITS

Any objections not set forth herein will be considered waived absent good cause shown.

Objections:

A. <u>Plaintiff:</u> Plaintiff objects to the following documents within Hartford's file.

1. Report of Jerome Siegel, M.D. (HAR 533-550). Plaintiff objects to this report as conclusory. *Kumho Tire Co., v. Carmichael*, 526 U.S. 137, 157 (1999) ("Opinion evidence that is connected to existing data only by the ipse dixit of the expert" should not be admitted.). Plaintiff, furthermore, objects to this report as failing to satisfy the minimum standards of reliability set forth in Federal Rule of Evidence 702 and *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Daubert* requires that an expert's methodology be

reliable. Dr. Siegel never examined plaintiff. There is nothing reliable about a methodology that consists of a review of a claimant's medical records as the exclusive method for assessing disability from fatigue and cognitive deficits. Furthermore, Dr. Siegel's report is unreliable because it relies on a videotape of plaintiff that (i) has no scientific basis as a representative sampling of Ms. Jacoby's functional capacity and (ii) omits the vast amount of time that plaintiff was allegedly under surveillance.

    2. Report of Pedro Garrido-Castillo, Ph.D. (HAR 551-563). Plaintiff objects to this report as conclusory. *Kumho Tire*, 526 U.S. 137 at 157. Plaintiff, furthermore, objects to this report as failing to satisfy the minimum standards of reliability set forth in Rule 702 and *Daubert*. *Daubert* requires that an expert's methodology be reliable. Dr. Garrido-Castillo never examined plaintiff. There is nothing reliable about a methodology that consists of a review of a claimant's medical records as the exclusive method for assessing disability from fatigue and cognitive deficits. Furthermore, Dr. Garrido-Castillo's report is unreliable because it relies on a videotape of plaintiff that (i) has no scientific basis as a representative sampling of plaintiff's functional capacity and (ii) omits the vast amount of time that plaintiff was allegedly under surveillance.

    3. Report of Richard Levy, M.D. (HAR 673-675). Plaintiff objects to this report as conclusory. *Kumho Tire*, 526 U.S. 137 at 157. Plaintiff, furthermore, objects to this report as failing to satisfy the minimum standards of reliability set forth in Rule 702 and *Daubert*. *Daubert* requires that an expert's methodology be reliable. Dr. Levy never examined plaintiff. There is nothing reliable about a methodology that consists of a review of a claimant's medical records as the exclusive method for assessing disability from fatigue and cognitive deficits. Furthermore, Dr. Levy's report is unreliable because it relies on a videotape of plaintiff

that (i) has no scientific basis as a representative sampling of plaintiff's functional capacity and (ii) omits the vast amount of time that plaintiff was allegedly under surveillance.

    4.  Report of William Sniger, M.D. (HAR 785-792). Plaintiff objects to this report as conclusory. *Kumho Tire*, 526 U.S. 137 at 157. Plaintiff, furthermore, objects to this report and as failing to satisfy the minimum standards of reliability set forth in Rule 702 and *Daubert*. *Daubert* requires that an expert's methodology be reliable. Dr. Sniger never examined plaintiff. There is nothing reliable about a methodology that consists of a review of a claimant's medical records as the exclusive method for assessing disability from fatigue and cognitive deficits. Furthermore, Dr. Sniger's report is unreliable because it relies on a videotape of plaintiff that (i) has no scientific basis as a representative sampling of plaintiff's functional capacity and (ii) omits the vast amount of time that plaintiff was allegedly under surveillance.

    5.  Employability Analysis Report. (HAR 661-669). Plaintiff objects to this report as conclusory. *Kumho Tire*, 526 U.S. 137 at 157. Plaintiff, furthermore, objects to this report as failing to satisfy the minimum standards of reliability set forth in Rule 702 and *Daubert*.

    6.  Videotape Surveillance of Plaintiff. Plaintiff objects to the authenticity of the videotape in Hartford's file. The videotape is not a scientific, representative sampling of plaintiff's functional capacity. Furthermore, it omits the vast amount of time that plaintiff was allegedly under surveillance.

    7.  The curriculum vita of Dr. William Sniger, Dr. Richard Levy, Dr. Pedro Garrido-Castillo and Dr. Jerome Siegel. Plaintiff objects to the admissibility of these exhibits because Hartford has refused to provide these documents to plaintiff throughout the claims process and discovery. On January 22, 2007, during the appeal process prior to litigation,

plaintiff requested copies of the curriculum vitae of the doctors identified by Hartford as participating in the denial (Drs. Levy and Sniger). On February 2, 2007, Hartford refused. It states "We will not release Dr. Levy's curriculum vitae as it is not relevant based on ERISA." Hartford similarly refused to release the curriculum vitae of Dr. Sniger. (HAR 457-458). Then, during litigation, plaintiff requested the curriculum vitae of these doctors in Interrogatory 3 and 4. Hartford objected "to the extent that Plaintiff is seeking information which is in addition to that contained in the administrative record, which has already been produced. Otherwise, see the administrative record and the curriculum vitae of the physicians." The "administrative record" contains no such curriculum vitae and Hartford produced no curriculum vita outside the record. Hartford should be precluded from offering exhibits at trial that it refused to produce during the claim process and discovery.

        B.     Defendant:

Defendant objects to all of Plaintiff's exhibits because they are not part of the administrative record. Regardless of the standard of review to be employed by the Court, the Court's review in this ERISA case is limited to the administrative record.

### IX.    PLAINTIFF'S WITNESS LIST

The witnesses listed below may be called at trial. No witness not identified herein shall be permitted to testify on either party's case in chief absent good cause shown.

1. Julie Jacoby, plaintiff.
2. Leo J. Shea, Ph.D., plaintiff's treating neuropsychologist. Dr. Shea will testify about his testing of plaintiff and her inability to work in any occupation.

    3.    Ritchie C. Shoemaker, M.D., plaintiff's treating physician. Dr. Shoemaker will testify that plaintiff is totally disabled as a result of chronic fatigue syndrome.

## X.    DEFENDANT'S WITNESS LIST

The witnesses listed below may be called at trial. No witness not identified herein shall be permitted to testify on either party's case in chief absent good cause shown:

In light of the Plaintiff's apparent unwillingness to stipulate to the authenticity and admissibility of the administrative record, Hartford identifies the following individuals for the purpose of authenticating the administrative record only:

1. Edna R. Golych, Hartford
2. Jeffrey C. Small, Hartford

Although Hartford believes there is no basis for this Court to apply a *de novo* standard of review, and even if a *de novo* standard were applicable, the case should still be decided on the administrative record. As such, Hartford maintains its objection to the introduction by Plaintiff of any evidence not contained within the administrative record. However, in an abundance of caution, Hartford identifies the following additional witnesses:

1. Dr. William Sniger
2. Dr. Richard Levy
3. Dr. Pedro Garrido-Castillo
4. Dr. Jerome Siegel
5. Christina M. Fleisher, Hartford
6. Edna R. Golych, Hartford

7. James Budkus, Hartford

8. Johanna Cobb, RN, Hartford

9. Brian Green, HUB Enterprises, Inc.

10. Samuel Cotto, SSC, Inc. Investigative Services

11. Laurie B. Ellis, Hartford

12. Custodian of Records of HUB Enterprises, Inc.

13. Custodian of Records of SSC, Inc. Investigative Services

14. Any other individuals identified in the administrative record.

## XI. RELIEF SOUGHT

Plaintiff:

(1) Long term disability benefits in accordance with the terms of the Plan on and after June 20, 2006, to the date of judgment.

(2) Prejudgment interest in the amount of 9% per annum.

(3) Declaration and clarification of the Court that defendant is obligated to pay benefits to plaintiff in accordance with the terms of the Plan as long as she remains totally disabled under the terms of the Plan up until the date that plaintiff turns age 65.

(4) Reasonable attorney fees and costs.

Defendant: Hartford seeks its attorneys' fees and costs.

3/18/08
SO ORDERED

LEWIS A. KAPLAN, USDJ

-16-

Dated:    New York, New York

          _____, 2008

                                          _____
                                          U.S. District Court Judge

Submitted by:

JULIE JACOBY

By: _____
Scott M. Riemer (SR5005)
RIEMER & ASSOCIATES LLC
60 East 42nd Street
Suite 2430
New York, NY 10165
 Attorney for Julie Jacoby


HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY

By: _____
Christina H. Bost Seaton (CB-7667)
TROUTMAN SANDERS LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 704-6000

David E. Constine, III (VSB No. 23223)
Admitted *pro hac vice*
Troutman Sanders LLP
P. O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1200
FAX (804) 697-1339

 Attorneys for Hartford Life and Accident Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that I am attorney for Defendant and that on March 12, 2008, I electronically filed a copy of the foregoing with the Clerk of the Court and served a copy of the same by first class mail to the following:

TO:

Scott M. Riemer
60 East 42nd Street, Suite 2430
New York, New York 10165

*[signature]*

Christina H. Bost Seaton, Esq.
Troutman Sanders LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 704-6000