TROUTMAN SANDERS LLP
Christina H. Bost Seaton (CB-7667)
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 704-6000
*Attorneys for Defendant*
*Hartford Life and Accident Insurance Company*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

|  |  |  |
|---|---|---|
| JULIE JACOBY, | : | No.: 07 Civ. 4627 (LAK) (RLE) |
|  | : |  |
| Plaintiff, | : |  |
|  | : | **DEFENDANT'S REPLY** |
| -against- | : | **MEMORANDUM IN** |
|  | : | **SUPPORT OF ITS MOTION** |
| HARTFORD LIFE AND ACCIDENT INSURANCE | : | **FOR SUMMARY** |
| COMPANY, | : | **JUDGMENT** |
| Defendant. | : |  |
|  | : |  |

------------------------------------------------------------------X

## TABLE OF CONTENTS

Table of Authorities ............................................................................................................ ii

INTRODUCTION ................................................................................................................ 1

ARGUMENT ....................................................................................................................... 1

   I.  The "Arbitrary And Capricious" Standard Of Review Is Constitutional .................. 1

      A.  The "Arbitrary and Capricious" Standard of Review Is Mandated by
          Relevant Supreme Court and Second Circuit Authority ...................................... 2

      B.  The "Arbitrary and Capricious" Standard Does Not Deprive the Court
          of Judicial Power ............................................................................................... 4

      C.  Even if Plaintiff Had a Right to an Article III Adjudication, *Schor*
          Waiver Applies ................................................................................................... 8

   II.  Plaintiff Raises No Genuine Issue Of Fact That Hartford's Decision Was
      Influenced By A Conflict Of Interest ...................................................................... 9

   III. Hartford's Decision Was Supported By Substantial Evidence And Was
      Not Arbitrary And Capricious ................................................................................ 12

      A.  The Independent Medical-Records Reviews Obtained By Hartford Are
          Substantial Evidence to Support Hartford's Claims Denial Decision ............... 12

          1.  The *Daubert* Analysis Is Inapplicable Here, But Even If It Were, the
              Medical Opinions Obtained by Hartford Meet the *Daubert* Standard ....... 12

          2.  Hartford Was Not Required to Retain a CFS or Fibromyalgia
              Expert to Review Plaintiff's File ................................................................ 14

          3.  Hartford Did Not Fail to Credit the Opinions of Plaintiff's Treating
              Physicians or Her Subjective Complaints of Pain and Fatigue ................... 14

          4.  Hartford's Doctors Opined that Plaintiff Could Return to Sedentary
              Work and Those Opinions Were Not Conclusory ....................................... 16

      B.  Hartford Was Not Obliged to Follow the Social Security
          Determination ................................................................................................... 17

   IV. Plaintiff Was Not Denied A Full and Fair Review ................................................. 18

CONCLUSION.................................................................................................................... 20

# TABLE OF AUTHORITIES

*Cases*

*Abrams v. Cargill*, 395 F.3d 882 (8th Cir. 2005)..................................................................... 19, 20

*Bayonne v. Pitney Bowes, Inc.*, 2005 U.S. Dist. LEXIS 2272, 2005 WL 407861
    (D. Conn. 2005) ............................................................................................................... 19

*Billinger v. Bell Atl.*, 240 F. Supp. 2d 274 (S.D.N.Y. 2003) ....................................................... 12

*Black & Decker Dis. Plan v. Nord*, 538 U.S. 822, 123 S.Ct. 1965 (2003)................................... 15

*Black v. UnumProvident Corp.*, 245 F. Supp. 2d 194 (D. Me. 2003)............................................ 5

*Boardman v. Prudential Ins. Co.*, 337 F.3d 9 (1st Cir. 2003) ..................................................... 16

*Brehmer v. Inland Steel Indus. Pension Plan*, 114 F.3d 656 (7th Cir. 1997) ...............................19

*Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 106 S. Ct. 3245 (1986) ............ 4, 8

*Crowell v. Benson*, 285 U.S. 22, 52 S. Ct. 285 (1932) .................................................................. 4

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993)........................ 12, 13

*Downs v. Liberty Life Assur. Co.*, 2005 WL 2455193 (N.D. Tex. 2005) ...................................... 5

*DuMond v. Centex Corp.*, 172 F.3d 618 (8th Cir. 1999) ............................................................. 18

*Dunkley v. Peoples Bank & Trust Co.*, 728 F. Supp. 547 (W.D. Ark. 1989) ................................ 7

*Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228 (4th Cir. 1997) ...............................................19

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S. Ct. 948 (1989)...................... passim

*Fitzpatrick v. Bayer Corp.*, 2008 U.S. Dist. LEXIS 3532, 2008 WL 169318
    (S.D.N.Y. 2008) ................................................................................................ 10, 14, 15, 16

*Forrester v. MetLife Ins. Co.*, 232 Fed. Appx. 758 (10th Cir. 2007)........................................... 20

*Glazer v. Reliance Std. Ins. Co.*, 2008 U.S. App. LEXIS 8583, 2008 WL 1775437
    (11th Cir. Apr. 21, 2008) ................................................................................................. 20

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S. Ct. 2782 (1989). ..................................... 4

*Hanford v. Clancy*, 87 N.H. 458, 183 A. 271 (1936).................................................................... 7

*Hottle v. BDO Seidman, LLP*, 268 Conn. 694, 846 A.2d 862 (2004).............................................. 7

*Kunstenaar v. Connecticut Gen'l. Life Ins. Co.*, 902 F.2d 181 (2d Cir. 1990)...................... 18, 19

*Mikrut v. Unum Life*, 2006 U.S. Dist. LEXIS 92265, 2006 WL 3791417
    (D. Conn. 2005) ........................................................................................................ 12

*Miller v. United Welfare Fund*, 72 F.2d 1066 (2d Cir. 1995)............................................. 12

*Murray's Lessee v. Hoboken Land and Improvement Co.*, 59 U.S. 272 (1856)............................ 4

*Nichols v. Prudential Ins. Co.*, 406 F.3d 98 (2d Cir. 2005).............................................. 18

*Pagan v. NYNEX Pension Plan*, 52 F.3d 438 (2d Cir. 1995) ......................................... 4, 17

*Parisi v. UnumProvident Corp.*, 2007 U.S. Dist. LEXIS 93472, 2007 WL 4554198
    (D. Conn. 2007) ........................................................................................................ 15

*Pava v. Hartford Life and Accident Ins. Co.*, 2005 U.S. Dist. LEXIS 41753,
    2005 WL 2039192 (E.D.N.Y. 2005)........................................................................... 16

*Peterson v. Continental Cas. Co.*, 282 F.3d 112 (2d Cir. 2002)............................................ 4

*Powers v. Fisher Controls Co.*, 246 N.W.2d 279 (Iowa 1976) ......................................... 8

*Pulvers v. First Union Life Ins. Co.*, 210 F.3d 89 (2d Cir. 2006)..................................... 9, 10

*Recupero v. New England Tel. & Tel. Co.*, 118 F.3d 820 (1st Cir. 1997) ...................................... 6

*Robilotta v. Fleet Boston Fin. Corp. Group Dis. Income Plan*, 2008 U.S. Dist. LEXIS
    25689, 2008 WL 905883 (E.D.N.Y. Mar. 31, 2008)................................................ 13

*Siegel v. Lewis*, 40 N.Y.2d 687, 358 N.E.2d 484 (1976).................................................. 7

*Suarato v. Bldg. Servs. 32bj Pension Fund*, 2008 U.S. Dist. LEXIS 23993,
    2008 WL 819745 (S.D.N.Y. Mar. 27, 2008) ............................................................ 18

*Sylvester v. Newton*, 321 Mass. 416, 73 N.E.2d 585 (1947).............................................. 7

*Thomas v. Union Carbide Agricultural Prods. Co.*, 473 U.S. 568, 105 S. Ct. 3325 (1985) .......... 4

*Wayne v. Chopivsky*, 657 F. Supp. 788 (E.D. Pa. 1987)................................................. 7

*Westinghouse Elec. Corp. v. New York City Trans. Auth.*, 14 F.3d 818 (2d Cir. 1994)................ 7

*Westinghouse Elec. Corp. v. New York City Trans. Auth.*, 82 N.Y.2d 47,
    623 N.E.2d 531 (1993)................................................................................................ 7

*Williams v. Aetna Life Ins. Co.*, 2007 WL 323048 (7th Cir. 2007) ............................................. 16

*Zuckerbrod v. Phoenix Mut. Life Ins. Co.*, 78 F.3d 46 (2d Cir. 1996)..................................... 4

**Other Authorities**

James E. Pfander, *Article I Tribunals, Article III Courts, and the Judicial Power of the United States*, 118 Harv. L. Rev. 643 (2004).......................................................... 5

Richard H. Fallon, Jr., *Of Legislative Courts, Administrative Agencies and Article III*, 101 Harv. L. Rev. 915 (1988).......................................................................... 5

Paul M. Bator, *The Constitution as Architecture: Legislative and Administrative Courts under Article III*, 65 Ind. L.J. 233 (1990) ......................................................... 5

## INTRODUCTION

As Plaintiff all but acknowledged in her earlier motion on the standard of review, the substantial evidence in the record supporting the denial of benefits does not allow her to prevail if appropriate deference is granted to Hartford's decision. Accordingly, Plaintiff has devoted more than half of her opposition brief to challenging the constitutionality of the "arbitrary and capricious" standard of review, a principle of ERISA jurisprudence that is well-established. Plaintiff's novel arguments that this Court should jettison the arbitrary and capricious standard of review are without merit.

In regard to the evidence in the administrative record, Plaintiff also attacks Hartford's claim decision as inadequate, notwithstanding its compilation of an 1,800-page record, four independent medical-records reviews and a detailed surveillance report that showed Plaintiff could do precisely what she claimed she could not. Substantial evidence supports Hartford's decision, and summary judgment should be granted.

## ARGUMENT

### I.    The "Arbitrary And Capricious" Standard Of Review Is Constitutional

Plaintiff's argument in support of discarding the "arbitrary and capricious" standard of review would require not merely "bold intervention," as Plaintiff earlier characterized the relief she sought. It would also require this Court:

- To refuse to follow an on-point Supreme Court case mandating that standard of review;
- To refuse to follow established Second Circuit authority (and ignoring decisions from every other Circuit Court of Appeals) also mandating and applying that standard;
- To adopt a contrary "*de novo*" plenary proceeding standard based on a faulty "judicial power" argument that no court has considered in this context, much less adopted; and
- To recognize that, under a *de novo* review standard, federal district courts will be the *de facto* plan administrators for every one of the tens of thousands of employee benefit plans in existence, substituting their own discretion for the discretion contractually vested in plan administrators in this specialized arena.

Plaintiff claims this bold action is constitutionally mandated to protect the federal courts' judicial power, yet all of Plaintiff's arguments on this point rest on a false premise: that benefit determinations made by fiduciaries under ERISA involve *delegation of adjudicatory functions* from courts to private entities. To the contrary, as other courts have recognized, ERISA does *not* delegate adjudicatory functions to fiduciaries, but merely establishes minimum standards that employee benefit plans must meet. Accordingly, if the plan terms—which have been accepted and agreed to by the plan sponsor and the plan participants—provide that fiduciaries have the ability and discretion to determine claim entitlement, those plan terms must be honored, and the role of the Court, in full exercise of its judicial power, is to determine whether that discretionary decision was arbitrary and capricious.

Moreover, even if the private, contractually agreed-upon method of claim determination at issue here could be interpreted as involving delegation of adjudicatory function, it is clear, under Supreme Court precedent, that plan participants waived any right to have determinations made *de novo* in a plenary proceeding in district court.

**A.    The "Arbitrary and Capricious" Standard of Review Is Mandated in This Case Under Relevant Supreme Court and Second Circuit Authority**

Plaintiff's argument that district courts should determine ERISA appeals in a full *de novo* proceeding, even where the plan at issue gives the fiduciary the discretion to determine benefit eligibility, has already been rejected by the Supreme Court and the Second Circuit. In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S. Ct. 948 (1989), the Court directly confronted the issue of what standard of review was appropriate for benefit determinations under ERISA. Most federal courts had adopted an "arbitrary and capricious" standard to review benefit denial decisions of administrators. *Id.* at 107, 109 S. Ct. at 952. Noting that Congress drafted ERISA with the intent of codifying certain principles of trust law, the Court observed that where a trust

vests discretion in a trustee to make decisions, that discretion is subject to considerable deference

by the courts:

> Trust principles make a deferential standard of review appropriate when a trustee
> exercises discretionary powers. See Restatement (Second) of Trusts § 187 (1959)
> ("Where discretion is conferred upon the trustee with respect to the exercise of a
> power, its exercise is not subject to control by the court except to prevent an abuse
> by the trustee of his discretion"). A trustee may be given power to construe
> disputed or doubtful terms, and in such circumstances the trustee's interpretation
> will not be disturbed if reasonable.

*Id.* at 111, 109 S. Ct. at 954 (citations omitted).  The Court's holding leaves no doubt that where

plan documents *do* grant plan administrators that discretion, (and there is no dispute that

Hartford had that discretion here) the appropriate standard of review is "arbitrary and

capricious:"

> Consistent with established principles of trust law, we hold that a denial of
> benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo*
> standard unless the benefit plan gives the administrator or fiduciary discretionary
> authority to determine eligibility for benefits or to construe the terms of the plan.

*Id.* at 115, 109 S. Ct. at 956-57.

    In addition, in rejecting Firestone's argument that a *de novo* standard would lead to more

litigation, the Court noted that parties could always *agree* to a more narrow scope of review:

> Because even under the arbitrary and capricious standard an employer's denial of
> benefits could be subject to judicial review, the assumption seems to be that a *de*
> *novo* standard would encourage more litigation by employees, participants and
> beneficiaries who wish to assert their right to benefits.  Neither general principles
> of trust law nor a concern for impartial decisionmaking, however, forecloses
> parties from agreeing upon a narrower standard of review.

*Id.* at 114-15, 109 S. Ct. at 956.  Thus, the Court acknowledged that the appropriate standard of

review was *a function of the parties' agreement.*  Plaintiff's suggestion that plan administrators

and insurance companies have inappropriately "seized on *dicta*" in *Firestone* to amend plans or

to claim the benefit of a deferential standard of review is therefore belied by the very basis of the

Supreme Court's holding and its reliance on trust principles to construe ERISA.

Unsurprisingly, the Second Circuit has held that the "arbitrary and capricious" standard

of review is "well-established" in ERISA benefit denial cases and that where discretion is

granted, "ERISA provides no authority for a court to render a *de novo* determination of an

employee's eligibility for benefits." *Peterson v. Continental Cas. Co.*, 282 F.3d 112, 117 (2d

Cir. 2002).[1]

### B.    The "Arbitrary and Capricious" Standard Does Not Deprive the Court of Judicial Power

Plaintiff argues that the "arbitrary and capricious" standard embraced in *Firestone* is

nevertheless unconstitutional because her claim to disability benefits is a "private right" that

must be adjudicated in an Article III court. From this departure point, Plaintiff invites the Court

on an extensive tour through decades of "judicial power" jurisprudence, from *Murray's Lessee*,[2]

to *Crowell v. Benson*,[3] *Thomas*,[4] *Schor*[5] and *Granfinanciera*.[6] Each of these cases addresses to

what extent Congress can establish non-Article III courts or administrative agencies and grant

them the power to determine certain disputes, and each of them therefore considers to what

extent "the judicial power of the United States" is exclusively entrusted to Article III courts. In

most cases, the Court sustained the ability of Congress to delegate certain adjudicatory powers to

non-Article III entities. The Supreme Court's logic in these cases has been less than clear. The

Court has admitted that "our precedents in this area do not admit of easy synthesis."[7] Scholars

have been less charitable, saying, for example, "the Supreme Court has been unable, in these 150

years, to find a coherent and satisfying theory for justifying the existence of legislative and

---

[1] *See also Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995) ("where the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious' ") (citing *Firestone*); *Zuckerbrod v. Phoenix Mut. Life Ins. Co.*, 78 F.3d 46, 49 (2d Cir. 1996) (same).

[2] *Murray's Lessee v. Hoboken Land and Improvement Co.*, 59 U.S. 272 (1856).

[3] 285 U.S. 22, 52 S. Ct. 285 (1932).

[4] *Thomas v. Union Carbide Agricultural Prods. Co.*, 473 U.S. 568, 105 S. Ct. 3325 (1985)

[5] *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 106 S. Ct. 3245 (1986).

[6] *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S. Ct. 2782 (1989).

[7] *Schor*, 478 U.S. at 847, 106 S. Ct. at 3255.

administrative courts."[8]

As apt as this topic may be for scholarly debate, it is irrelevant to the question of the appropriate standard of review for discretionary determinations *contractually* entrusted by private parties to a private claim administrator. *All* of the decisions cited by Plaintiff deal only with how much power to adjudicate disputes *Congress* may delegate to *legislative courts or administrative agencies*. But administrators and fiduciaries are private parties, and Congress did not delegate any adjudicatory function to them, under ERISA or otherwise. *See Black v. UnumProvident Corp.*, 245 F. Supp. 2d 194, 199 (D. Me. 2003) ("ERISA does not delegate any adjudicative functions to an otherwise private party"); *Downs v. Liberty Life Assur. Co.*, 2005 WL 2455193, at *6 (N.D. Tex. 2005) (same). Instead, employers may establish benefit plans, which may or may not vest discretion with claim administrators to determine benefit eligibility or to interpret the plan, and employees are free to accept employment and participate in the plan or not. Since ERISA does not delegate adjudicatory power to plan administrators, the scope of "judicial power" under Article III is simply not at issue.

Indeed, in *Firestone* the Supreme Court expressly analyzed ERISA with reference to trust principles, treating plans as private arrangements that parties are free to structure as they see fit, and nothing "forecloses parties from agreeing upon a narrower standard of review." 489 U.S. at 115, 109 S. Ct. at 956. Far from ceding judicial power to plan administrators, the Court's opinion itself requires a *de novo* review where the plan does not grant discretion to the administrator or fiduciary to make eligibility determinations. At the same time, it requires a

---

[8] Paul M. Bator, *The Constitution as Architecture: Legislative and Administrative Courts under Article III*, 65 Ind. L.J. 233, 239 (1990). *See also* Richard H. Fallon, Jr., *Of Legislative Courts, Administrative Agencies and Article III*, 101 Harv. L. Rev. 915, 916 (1988) ("The Supreme Court's jurisprudence concerning congressional power to substitute legislative courts and administrative agencies for 'constitutional courts' created under Article III has long abounded with confusion."); James E. Pfander, *Article I Tribunals, Article III Courts, and the Judicial Power of the United States*, 118 Harv. L. Rev. 643, 647 (2004) ("Scholars have searched, with mixed success, for an organizing and limiting principle in the somewhat muddled jurisprudence that governs the relationship between Article III courts and Article I tribunals.").

deferential standard when such discretion is granted. Thus, the decision merely applies normal principles of judicial review where the issue is whether discretion has been reasonably exercised.

The First Circuit expanded on *Firestone's* logic in rejecting an argument similar to Plaintiff's here and focused on the limited nature of judicial review where the dispute turns on the propriety of an out-of-court decision:

> A district court's subject-matter jurisdiction over a claim may be solely for judicial review of an out-of-court decision on the merits of the claim. . . . [T]his kind of limitation may be implicit in statutory provisions for judicial review of special kinds of out-of-court substantive decisions made by *private* decisionmakers such as those acting under employee benefits plans, making decisions reviewable in this case under ERISA.
>
> In a regime characterized in large part by limited jurisdiction, a statutory authorization for *judicial review* of out-of-court decisions does not imply authorization for a court to expand its jurisdiction to a *plenary* authority to decide, itself, all genuinely disputable factual issues decisive of the merits of claims.

*Recupero v. New England Tel. & Tel. Co.*, 118 F.3d 820, 829 (1st Cir. 1997) (emphasis original; citation omitted). Like *Firestone*, *Recupero* demonstrates that ERISA does not deprive a court of judicial power, but the scope of the court's review under its judicial power is necessarily defined by the nature of the dispute.

Plaintiff appears to argue that *any* dispute among private litigants always gives rise to a right to obtain a full, *de novo* adjudication of the dispute in federal court. Opp. Br. at 6. From this, Plaintiff argues that *Firestone* is an aberration that unconstitutionally cedes judicial power.

In truth, the deferential review approved in *Firestone* is typical of the review courts give discretionary determinations, including in contract cases where one party has that power. *Firestone* itself relied on trust principles, and many trust cases recognize that courts are not to substitute their discretion for that of a trustee, but are to review the exercise of discretion to determine if it was arbitrary.

It has been long established as a matter of law that the judgment of this court

cannot be substituted for the discretion conferred upon fiduciaries fairly, reasonably and honestly exercised. . . . In the instant case the only question is whether the exercise of discretion by the executor complained of was arbitrary, capricious and not in good faith.

*Sylvester v. Newton*, 321 Mass. 416, 421-22, 73 N.E.2d 585, 588 (1947).[9]

Courts similarly defer to discretion granted to and soundly exercised by one party in contract cases. The Second Circuit has held that an "arbitrary and capricious" standard of review is proper where one party to a construction contract has the power to determine all disputes under the contract as arbiter. *Westinghouse Elec. Corp. v. New York City Trans. Auth.*, 14 F.3d 818, 821-23 (2d Cir. 1994). The contract in that case called for such determinations to be reviewed on an "arbitrary and capricious" standard, and the Second Circuit rejected a challenge that a less-deferential standard was required. *Id.*[10] *See also Hottle v. BDO Seidman, LLP*, 268 Conn. 694, 722-23, 846 A.2d 862, 879 (2004) (New York law--agreement that required disputes to be determined by board of directors and partners of one of the parties was enforceable, but subject to judicial review if the arbitrators were "unfair or unfaithful to their obligations") (quoting *Siegel v. Lewis*, 40 N.Y.2d 687, 691, 358 N.E.2d 484 (1976)); *Wayne v. Chopivsky*, 657 F. Supp. 788, 792 (E.D. Pa. 1987) (Pennsylvania law--parties' contractual agreement to have auditor determine net earnings was binding; court "may review the auditor's determination only to see if

---

[9] "Although the trustee's powers are wide, they are not unlimited. . . . It does not follow from this that the court can exercise discretion for him or is, in any sense, a substitute trustee. The only function of the court is to set the bounds of reasonableness within which the trustee may exercise his discretionary powers." *Hanford v. Clancy*, 87 N.H. 458, 460, 183 A. 271, 272 (1936). *See also Dunkley v. Peoples Bank & Trust Co.*, 728 F. Supp. 547, 557 (W.D. Ark. 1989) (Florida law: "court will not control [trustee's] exercise [of discretion] as long as he does not exceed the limits of the discretion conferred upon him. The court will not substitute its own judgment for his.") (quoting A. Scott, *The Law of Trusts* § 187 (3d ed. 1967)).

[10] The court had also certified to the New York Court of Appeals the question of whether such delegation of discretion to one party to a contract, reviewable on an arbitrary and capricious standard, violated public policy. That court replied in the negative, "particularly because of the provision for judicial review of the adjudicator's decision." *Westinghouse Elec. Corp. v. New York City Trans. Auth.*, 82 N.Y.2d 47, 54, 623 N.E.2d 531, 535 (1993). The New York high court rested its decision largely on freedom of contract principles: "The rule of law should not suddenly be changed to dislodge reliably perceived public policy in New York, which encourages parties to agree to submit their disputes to forums and persons for prompt, efficient and fair resolution, by their reckoning, not that of the courts, after the fact." *Id.* at 56, 623 N.E.2d at 535-36.

it was an objective determination made in good faith"); *Powers v. Fisher Controls Co.*, 246

N.W.2d 279, 282 (Iowa 1976) (pre-ERISA, pension benefit case; "where two parties recognize

the advantages an administrative board brings to contract decisions and choose to grant to that

board the power to interpret and enforce the same, a court should not substitute its judgment or

broadly review the board's determination"). As these cases therefore illustrate, *Firestone*, far

from being aberrant, correctly decided that the scope of judicial review in this context is merely a

product of the parties' agreement.

### C.    Even if Plaintiff Had a Right to an Article III Adjudication, *Schor* Waiver Applies

Plaintiff acknowledges that even in cases where Congress has delegated adjudicatory

functions to a non-Article III body, a litigant can waive any constitutional objection. *See*

*Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848-50, 106 S. Ct. 3245, 3255-56

(1986). She nevertheless argues that no waiver occurred here.

Contrary to Plaintiff's arguments, in *Schor*, the Supreme Court noted, "Article III does

not confer on litigants an absolute right to the plenary consideration of every nature of claim by

an Article III court." *Id.* at 848, 106 S. Ct. at 3255. Therefore, as with rights to trial by jury or to

trial after pleading guilty, any personal right to an Article III adjudication was subject to waiver.

*Id.* Also contrary to Plaintiff's arguments, *Schor* held that waiver need not be express: an

"effective waiver" could be inferred from a litigant's conduct. *Id.* at 849, 106 S. Ct. at 3256.

Here, any right Plaintiff may have had to a plenary Article III adjudication of disputes

regarding her claims was waived when she agreed to the terms of the very plan that created her

benefits and that gave Hartford the discretion to determine eligibility for them. In *Firestone*, the

Supreme Court noted that private parties were free to make private arrangements that gave plan

fiduciaries the discretion to make such determinations, which narrowed the scope of judicial

8

review. 489 U.S. at 114-15, 109 S. Ct. at 956. Thus, even if ERISA involved delegation of

adjudicatory authority (which it does not), the Supreme Court has already blessed the ability of

private parties to waive the right to Article III plenary adjudication by agreeing to have claim

determinations made by plan fiduciaries.[11]

## II.    Plaintiff Raises No Genuine Issue Of Fact That Hartford's Decision Was Influenced By A Conflict Of Interest

Plaintiff also contends that a *de novo* standard of review should apply because Hartford

was influenced by a conflict of interest. Under the law of the Second Circuit, deference may be

lessened only if a plaintiff proves that "the administrator was *in fact* influenced by the conflict of

interest" which arises if the insurer is also the decisionmaker. *Pulvers v. First Union Life Ins.*

*Co.*, 210 F.3d 89, 92 (2d Cir. 2006) (emphasis original). The fact that Hartford had some

financial interest in the decision is "alone insufficient as a matter of law to trigger a stricter

review." *Id.* Here, Plaintiff has failed to meet her burden.

The record is replete with evidence that Hartford conducted a careful, painstaking review

of Plaintiff's claim. Indeed, it compiled a record that is 1,845 pages in length; it obtained

numerous medical reviews, including four reviews by independent physicians; it carefully

considered the opinions of Plaintiff's treating physicians, her own statements and the

determination of the Social Security Administration; and it obtained surveillance, including

video, which demonstrated that Plaintiff's subjective descriptions of her restrictions and

limitations were markedly different from her actions.

Ironically, the basis for Plaintiff's primary argument that Hartford acted improperly is

that Hartford obtained four independent medical reviews: three from well-credentialed private

---

[11] Hartford notes that Plaintiff has not filed her own motion for summary judgment on the standard of review, and raises this argument only in opposition to Hartford's motion. Hartford objects to Plaintiff's tactic, which forces Hartford to oppose her arguments in a limited reply brief. The Court should not grant Plaintiff affirmative relief absent a properly-made summary judgment motion, to which Hartford has a full and fair opportunity to oppose.

physicians and one from a private neuropsychologist.[12]  Plaintiff contends that Hartford's

reliance on these doctors somehow reflects that it was unduly influenced by the conflict because,

according to Plaintiff, they were obtained through a service that provides reviewing physicians,

University Disability Consortium ("UDC").  In particular, Plaintiff speculatively argues that

UDC and Hartford have an improper relationship, and that UDC's bias is evidenced by the fact

that it selected Dr. Richard Levy, a Yale and Dartmouth educated neurologist, to review

Plaintiff's file.[13]  Opp. Br. at 13-14.  Plaintiff unfairly states that Dr. Levy does not believe in

Fibromyalgia or Chronic Fatigue Syndrome ("CFS").

        As an initial matter, the entire premise of Plaintiff's argument is wrong because Dr. Levy

was selected *not* by UDC, but by a service known as Medical Advisory Group, L.L.C. ("MAG").

HAR 673-75.  Moreover, the manner in which Hartford dealt with Dr. Levy's opinion is perhaps

some of the strongest evidence in the record demonstrating that it was *not* influenced by a

conflict of interest.  Dr. Levy's report expressly concluded to a "high degree of certainty that

[Plaintiff] is not precluded from performing full time work."  *Id.*  Hartford could have simply

accepted Dr. Levy's opinion and denied the claim.  But that is not what happened.[14]  Instead,

Hartford started *anew* with a different independent reviewer, Dr. William Sniger, a Board-

certified Physical Medicine and Rehabilitation specialist.  Dr. Sniger reviewed all of the records,

spoke with Plaintiff's treating physicians and provided a detailed report concluding that "the

preponderance of information does not support the claimant's alleged inability to perform full-

---

[12] The curricula vitae of these doctors are attached to Hartford's opening memorandum as Exhibits C - F.  In her
brief, Plaintiff chastises Hartford and states that these CVs were *not* made available to her in discovery.  This is not
accurate.  In response to Plaintiff's Request for Production 14, Hartford offered to produce the CVs.  When Plaintiff
did not ask for the CVs to be sent, Hartford sent them anyway.

[13] The "evidence" Plaintiff cites to impugn the relationship between UDC and Hartford is not part of the record of
this case and should not be considered.  Plaintiff may not rely on snippets of evidence cited in other cases that
Hartford has not had an opportunity to address in this case.  *See Fitzpatrick v. Bayer Corp.*, 2008 U.S. Dist. LEXIS
3532 at *30-31 n.7.

[14] Dr. Levy's opinion is part of the record, but it is not even referenced in Hartford's denial letter as a basis for the
decision.  HAR 636-640.

time work...." HAR 785-792. *Strikingly*, in complete contradiction to Plaintiff's representations

to the Court, Dr. Sniger also was *not* selected through UDC, but was provided by MAG.[15]

Plaintiff's attempt to prove that Hartford's decision was in fact motivated by a conflict of

interest is also derailed by the surveillance obtained. Recognizing the significance of the

surveillance, Plaintiff attacks it as conclusory and unreliable, but these attempts ring hollow.

Initially, Plaintiff implies that only ten minutes of surveillance captured her doing anything

substantial. This is not accurate. For example, on December 7, 2005 alone, Plaintiff was

observed by the investigator driving towards Massachusetts for more than two hours. The entire

time was simply not on video, but it is in the report.

The surveillance was powerful not for its quantity, but for its quality. The alleged

disability is based on subjective complaints of pain. Accordingly, Plaintiff's credibility is critical

to Hartford's assessment. The surveillance revealed that the restrictions and limitations she

reported were substantially overstated. *See* Hartford opening memorandum ("Hartford Mem.")

at 11-15. Indeed, Plaintiff had reported that she could not drive more than 20 minutes and was

too weak even to engage in telephone conversations because she could not hold the phone. HAR

923, HAR SIU 058. Yet, she was observed, for example, pushing a shopping cart with six bags

of groceries and lifting each bag into the trunk, and she later admitted driving three hours from

New York to Massachusetts. *See* Hartford Mem. at 11-15. Plaintiff denied being able to do such

things, but when confronted with video admitted: "I realize that some of these activities

exceeded the restrictions and limitations outlined by my doctor, and what I have reported to

Hartford ...." HAR SIU 062. The surveillance rebuts any inference that Hartford acted based on

a conflict of interest.

---

[15] There is absolutely no evidence in the record that the four doctors who serviced the files were anything but independent. If "independence" is defeated because the doctors were paid, an insurer could never engage a third-party reviewer or examiner without subjecting itself to a *de novo* review.

Moreover, the cases Plaintiff cites to attempt to minimize its effect are completely inapposite, as none of them involved surveillance of a claimant captured doing precisely what she said she could *not* do. *See Billinger v. Bell Atl.*, 240 F. Supp. 2d 274, 283-84 (S.D.N.Y. 2003) (where videotape depicted Plaintiff performing physical activities she claimed she was incapable of performing, insurer was reasonable in discounting her subjective complaints). Because Plaintiff has not raised a grievance issue of fact that Hartford was, in fact, influenced by a conflict of interest, the arbitrary and capricious standard of review is fully applicable.[16]

## III.    Hartford's Decision Was Supported By Substantial Evidence And Was Not Arbitrary And Capricious

### A.    The Independent Medical-Records Reviews Obtained By Hartford Are Substantial Evidence to Support Hartford's Claims Denial Decision

Plaintiff bears the burden to prove that she was totally disabled and that the decision of Hartford was without reason, unsupported by substantial evidence or erroneous as a matter of law. *See* Hartford Mem. at 27-28; *Miller v. United Welfare Fund*, 72 F.2d 1066, 1070 (2d Cir. 1995). Moreover, a fiduciary under ERISA does not abuse its discretion by not accepting the opinion of a plaintiff's treating physicians and choosing instead to accept a conflicting opinion. Facing this heavy burden, Plaintiff has attacked the opinions, methods and credibility of the independent records reviewers engaged by Hartford. Plaintiff's challenges, however, are unsupported by the record and the law.[17]

#### 1.    The *Daubert* analysis is inapplicable here, but even if it were, the medical opinions obtained by Hartford meet the *Daubert* standard.

Plaintiff argues that the doctors engaged by Hartford to review Plaintiff's medical reports

---

[16] Plaintiff's reliance on *Mikrut v. Unum Life*, 2006 U.S. Dist. LEXIS 92265 (D. Conn. 2005) is also misplaced. In *Mikrut*, unlike the present case, there were no independent medical reviews; the insurer relied solely on forms completed by the plaintiff's physicians; and the insurer did not attempt to even assess plaintiff's subjective symptoms.

[17] Even under a *de novo* standard of review, the decision should be upheld. In essence, this is a case based solely on subjective symptoms where the Plaintiff's claimed level of inactivity was contradicted by numerous independent doctors and surveillance observations. The question in a *de novo* review would be whether, based on the record, Hartford's decision was correct, which plainly was the case here.

did not personally examine her, and therefore the reports should not be considered because they fail to satisfy the standards for reliability under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Opp. Br. at 19. Plaintiff's argument fails for three reasons: (1) *Daubert* applies only to the admissibility of expert testimony at trial, not to evidence in an administrative record; (2) an expert physician who has reviewed records would be allowed to provide an opinion under *Daubert*; and (3) ERISA does not require an insurer to conduct an independent medical examination rather than engaging a physician to perform a record review.

The same argument was recently rejected in *Robilotta v. Fleet Boston Fin. Corp. Group Dis. Income Plan*, 2008 U.S. Dist. LEXIS 25689 (E.D.N.Y. Mar. 31, 2008). In *Robilotta*, the plaintiff argued that Rule 702 of the Federal Rules of Evidence provided guidance for the courts in "evaluating whether or not the carrier's decision as to the relative weights of these [independent medical records reviewers'] opinions was arbitrary and capricious." *Id.* at *38. The plaintiff argued that because the insurer's medical records reviewer "never examined or even spoke to plaintiff," the report did not meet the reliability standards under Rule 702 or *Daubert*. The court rejected this position on the grounds that "Plaintiff provides no support for importing the requirements of federal evidentiary rules on the admissibility of expert opinion at trial to the present situation." *Id.* Moreover, the Court stated that even under *Daubert,* a physician who has only reviewed records would be permitted to testify. "There can be no doubt that Dr. Brown's opinion would not be excluded under the Federal Rules merely because Dr. Brown did not personally examine Plaintiff but rather reviewed her medical records." *Id.*

The decision in *Robilotta* is equally applicable here. Indeed, the law of ERISA is well established that an insurer is not required to have a claimant personally examined by an independent examiner. *See Fitzpatrick v. Bayer Corp.*, 2008 U.S. Dist. LEXIS 3532 (S.D.N.Y.

2008) (CFS case based on subjective symptoms; "any suggestion that an administrator's

physicians are required to conduct an in-person, physical examination of a plaintiff rather than a

review of the record in a case such as this is unsupported by law. . . . To the contrary, courts in

this district have found that an administrator's reliance on the opinions of non-examining

physicians over the plaintiff's treating physician is not, in and of itself, arbitrary and

capricious.").

    **2.**    **Hartford was not required to retain a CFS or fibromyalgia expert to review plaintiff's file.**

    Plaintiff argues that the independent medical opinions obtained by Hartford are not

substantial evidence because none of the doctors allegedly were experts in CFS or fibromyalgia.

Again, this precise argument was recently made and rejected in *Bayer*:

> Similarly, there is no requirement that the Committee engage physicians specially
> trained in the diagnosis of CFS and fibromyalgia to examine the Plaintiff or the
> Plaintiff's records in a recovery of benefits case. To the contrary, in similar cases
> involving plaintiffs afflicted with CFS and/or fibromyalgia, courts deemed it
> sufficient that doctors training in internal medicine or occupational medicine were
> retained to review the Plaintiff's records....

*Id.* at **43-44 (citations omitted). Here, Plaintiff's medical records were reviewed by Dr.

Sniger, Board-certified in physical medicine and rehabilitation; Dr. Levy, Board-certified in

neurology; Dr. Garrido-Castillo, a neuro-psychologist; and Dr. Siegel, Board-certified in internal

medicine and occupational medicine. Each of these doctors plainly was, as stated in *Bayer*,

"sufficiently qualified to judge the extent of plaintiff's disability." *Id.* at *44.

    **3.**    **Hartford did not fail to credit the opinions of Plaintiff's treating physicians or her subjective complaints of pain and fatigue.**

    Contrary to Plaintiff's assertion, Hartford did not fail to consider the opinions of her

treating physicians or their reports of her subjective complaints of pain and fatigue. Instead, as

reflected in its denial letters, Hartford considered those opinions and reports, but also considered,

and eventually gave greater weight to, the opinions of the independent doctors who reviewed

Plaintiff's records and the surveillance report of Plaintiff's activities. Based on the detailed

denial letter (HAR485-490) and uphold letter (HAR568-582), which recite expressly the

subjective complaints made by Plaintiff and reported by her physicians, Plaintiff cannot seriously

contend that Hartford "disregarded" them. Opp. Br. at 20. *See Bayer, supra* *38 ("the

Committee's consideration of plaintiff's subjective complaints is evinced by *inter alia*, its review

of the medical records and the letter submitted by Dr. Levine").

Though Plaintiff insists that Hartford was required to accept the opinions of her treating

physicians, this is not the law. Under ERISA, "courts have no warrant to require administrators

automatically to accord special weight to the opinions of a claimant's physician; nor may courts

impose on plan administrators a discrete burden of explanation when they credit reliable

evidence that conflicts with a treating physician's evaluation." *Black & Decker Dis. Plan v.

Nord*, 538 U.S. 822, 834 (2003). *See also Bayer, supra*, at *41-43 (and numerous cases cited)

("Simply put, while the administrator may *choose* to give greater weight to the treating

physician's findings, it is not required to do so under the arbitrary and capricious standard.")

(emphasis original).

Moreover, treating physicians' assessments that are based on a claimant's subjective

complaints of pain "carry little weight in supporting disability claims, and the plan administrator

is not required to accept them." *Parisi v. UnumProvident Corp.,* 2007 U.S. Dist. LEXIS 93472

(D. Conn. 2007). Indeed, an insurer's decision to require objective evidence of *functional

impairment,* rather than simply accepting plaintiffs' assertions is reasonable in cases involving

CFS and fibromyalgia, which often involve subjective complaints of pain and fatigue. *Pava v.

Hartford Life & Acc. Ins. Co.*, 2005 U.S. Dist. LEXIS 41753 (E.D.N.Y. 2005) (CFS and

fibromyalgia case; administrator was not obligated to give any special weight to the opinions of the plaintiff's treating physicians). Plaintiff attempts to blur the distinction between (1) objective evidence of a *diagnosis* and (2) objective evidence of a *functional impairment*. Opp. Br. at 22. Plaintiff contends that Hartford was unreasonable in requiring objective evidence of a *diagnosis* because CFS and fibromyalgia depend on subjective complaints. Yet Hartford had the right to require objective evidence of *functional impairment*, and Plaintiff's claim was deficient in this regard. *See Williams v. Aetna Life Ins. Co.*, 2007 WL 323048 (7th Cir. 2007) ("A distinction exists . . . between the amount of fatigue or pain an individual experiences, which . . . is entirely subjective, and how much an individual's degree of pain . . . limits his functional capabilities, which can be objectively measured."); *Boardman v. Prudential Ins. Co.*, 337 F.3d 9, 16 n.5 (1st Cir. 2003) (same). In *Bayer*, the Court, citing many cases, fully embraced this distinction and the proposition that it was not unreasonable, in a case of CFS or fibromyalgia, for a plan administrator "to require the plaintiff to produce objective medical evidence of total disability." *Bayer, supra,* at *32. In so holding, the Court emphasized that operative question was "*not* whether plaintiff actually suffered from CFS and/or fibromyalgia," but whether she was functionally disabled as a result. *Id.*

In sum, the doctors engaged by Hartford found that the objective evidence did not demonstrate Plaintiff was functionally disabled, regardless of the label of any diagnosis.[18] In the absence of objective evidence demonstrating that Plaintiff was disabled from full-time work, Hartford's assessment that she was not disabled was not unreasonable.

---

[18] Plaintiff claims that the objective tests support the diagnosis of her condition and disability. *See* Opp. Br. at 3. Yet Plaintiff offers no citation to the record to support her contention and instead offers broad, unsupported conclusions that the testing "corroborate[s] the diagnosis of chronic fatigue syndrome." *Id.* This alleged "corroboration" is found nowhere in the record.

**4.    Hartford's doctors opined that Plaintiff could return to sedentary work and those opinions were not conclusory.**

Plaintiff erroneously claims that none of the doctors who reviewed her file opined that she was capable of working in a full-time sedentary position. Plaintiff also incorrectly argues that the doctors' reports were conclusory. But each of the independent medical-records reviewers carefully reviewed Plaintiff's medical records and test results and provided detailed explanations of their opinions. *See* Hartford Mem. at 16-17, 22-25. For example, Dr. Sniger discussed in detail Plaintiff's medical records and opined that plaintiff was able to perform full-time work with restrictions only of: "Lifting/carrying of at least 10 pounds occasionally reaching frequently; sitting, feeling and handling constantly; opportunity to change positions as needed." HAR 792. Based on Dr. Garrido-Castillo's review of Plaintiff's neuropsychological records, he concluded that her "current level of neuropsychological functioning does not preclude her returning to work." HAR 561-62. Finally, in Dr. Siegel's detailed 16-page report analyzing Plaintiff's medical records, he determined there was nothing that would interfere with Plaintiff's ability to perform sedentary work. HAR 540-549. The record speaks for itself on this issue and it plainly provides ample support for Hartford's decision.

**B.    Hartford Was Not Obliged to Follow the Social Security Determination**

Plaintiff argues that Hartford was obliged to follow the December 2002 determination of the SSA that Plaintiff was entitled to receive benefits. This determination, however, is not binding on Hartford's decision in August 2006 to discontinue Plaintiff's LTD benefits, nor did Hartford have any obligation to "credit" that determination in light of the terms of the Plan.

In the Second Circuit, "Social Security determinations are not binding on ERISA plans." *Pagan v. NYNEX Pension Plan*, 846 F. Supp. 19 (S.D.N.Y. 1994), *aff'd* 52 F.3d 438 (2d Cir. 1995). The SSA definition of "disabled" differs from the definition of "totally disabled" under

the Plan, and Hartford was under no obligation to afford the SSA decision any particular weight or significance. *See Kunstenaar v. Connecticut Gen'l. Life Ins. Co.*, 902 F.2d 181, 184 (2d Cir. 1990) ("The term 'disability' has a variety of meanings, depending on the context in which it is used. *See, e.g.*, 42 U.S.C. § 423(d)(1) (Social Security disability insurance benefits). . . . Statutory definitions such as these are not binding in the instant case."). In addition, the SSA applies a treating physician rule, which does not apply under ERISA. *See Suarato v. Bldg. Servs. 32bj Pension Fund*, 2008 U.S. Dist. LEXIS 23993, *69 (S.D.N.Y. Mar. 27, 2008) ("the Trustees, therefore, acted within their discretion in not finding Suarato disabled, even though the Social Security Administration came to the opposite conclusion").

## IV.  Plaintiff Was Not Denied A Full And Fair Review

Plaintiff argues for the first time that she was not given a full and fair review of her disability claim because the denial letter somehow was inadequate and she was not given an opportunity to rebut the reports of Dr. Siegel and Dr. Garrido-Castillo that were prepared in connection with the appeal. As an initial matter, this Court should disregard Plaintiff's argument because she did not allege in her Complaint that she was denied a full and fair review. However, even if the Court considers Plaintiff's argument, Hartford did not violate ERISA.

First, the denial letter plainly complied, and at the very least substantially complied, with Hartford's obligations under ERISA. *Nichols v. Prudential Ins. Co.*, 406 F.3d 98, 107 (2d Cir. 2005) ("Substantial compliance is thus a doctrine that forgives technical noncompliance for purposes of review of a plan administrator's discretionary decision."). Under ERISA, Hartford is required to ensure that when a claim for benefits is denied, the claimant is able to "prepare adequately for any further administrative review, as well as appeal to the federal courts." *DuMond v. Centex Corp.*, 172 F.3d 618, 622 (8th Cir. 1999). Plaintiff contends that Hartford, in its letter, failed to provide a description of "additional material necessary for [her] to perfect the

18

claim." Opp. Br. at 29. Yet Hartford is not, as Plaintiff suggests, required to tell her how to prove her case, and the burden to prove a disability lies solely with the claimant. As detailed in Hartford's 7-page denial letter, the totality of the evidence demonstrated that Plaintiff did not prove that she was totally disabled from working. *See* HAR485-491. There was no specific document, form or report missing from the record which was necessary for Plaintiff to "perfect" her claim and Plaintiff does not identify any document that she would have submitted given the chance. The denial letter informed Plaintiff that she could appeal the denial and should "clearly outline [her] position" and "submit written comments, documents, records and other information related to her claim." HAR490. In response, Plaintiff submitted voluminous amounts of additional information in support of her appeal. Her claim that Hartford made a procedural error is nothing more than a *post hoc* attempt to keep her claim alive. *See Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 236 (4th Cir. 1997) (finding that the insurer is not "under an obligation to inform [plaintiff] of what she needs to tell MetLife in order to obtain disability benefits. That is not MetLife's role as a fiduciary. MetLife must treat each claimant with procedural fairness, but, because it must also guard against improper claims, it is not its duty to affirmatively aid claimants in proving their claims."); *Brehmer v. Inland Steel Indus. Pension Plan*, 114 F.3d 656, 662 (7th Cir. 1997) ("Brehmer's claim was not 'unperfected' due to missing information, but rather was denied because of the nature of her separation."); *Bayonne v. Pitney Bowes, Inc.*, 2005 U.S. Dist. LEXIS 2272, **7, 20 (D. Conn. 2005) (finding that the insurer engaged in a full and fair review where the denial letter provided the reasons for the denial and invited the claimant to submit "any documents or records you have in support of your appeal").

Second, Plaintiff's argument that Hartford failed to provide her with an opportunity to address the medical reports generated on appeal, citing *Abrams v. Cargill*, 395 F.3d 882 (8th Cir.

2005), also is misplaced. *Abrams* was decided under the pre-2002 ERISA regulations and held

that a plan was required to share a new medical report with the plaintiff if it was going to rely on

it as the basis for denying the appeal. *Abrams*, however, has been roundly criticized as setting up

an administrative process that will never end. Under *Abrams*, before an appeal can be denied, all

evidence must be shared with the participant who can then offer rebuttal evidence; the insurer

must then review the rebuttal evidence and re-submit any new information to the participant

before denying again; and so on. This result is wholly contrary to ERISA's policy directives for

quick resolution of claims. *See, e.g., Metzger v. Unum Life Ins. Co.*, 476 F.3d 1161, 1166 (10th

Cir. 2007) (criticizing *Abrams'* "unnecessary cycle of submission, review, re-submission and re-

review" and the potential for "circularity of review").[19]

In this case, Drs. Garrido-Castillo and Siegel did not evaluate new information or

generate "surprise" evidence of which Plaintiff was not aware. Instead, they simply reviewed all

of the evidence, including the surveillance report which Hartford had shared with Plaintiff.

Plaintiff was given a full and fair review, she was in no way prejudiced and this Court should not

accept Plaintiff's last-ditch invitation to change the law and create an "unnecessary cycle of

submission, review, re-submission and re-review" in this Circuit.

## CONCLUSION

For all the reasons set forth in Hartford's opening memorandum and herein, summary

judgment should be entered in its favor.

---

[19] This issue was recently addressed in *Forrester v. MetLife Ins. Co.*, 232 Fed. Appx. 758 (10th Cir. 2007). In *Forrester*, the plaintiff argued that "before Metropolitan decided her administrative appeal she should have been provided, and given the opportunity to rebut, the reports of non-examining consultants ...who reviewed the evidence submitted on her behalf and confirmed the initial determination that her conditions did not render her disabled under the Plan." *Id.* at 760. The court disagreed and found that the duty of full and fair review under the ERISA regulations "does not require the disclosure of such reports until *after* determination of a claimant's administrative appeal." *Id.* (emphasis original). *See also Glazer v. Reliance Std. Ins. Co.*, 2008 U.S. App. LEXIS 8583 (11th Cir. Apr. 21, 2008) (an insurer has no duty to produce documents to a claimant prior to the final denial decision).

Dated:     New York, New York    TROUTMAN SANDERS LLP
            May _____, 2008

By: _____
     Christina H. Bost Seaton (CB-7667)
     TROUTMAN SANDERS LLP
     The Chrysler Building
     405 Lexington Avenue
     New York, New York 10174
     (212) 704-6000

     David E. Constine, III (VSB No. 23223)
     Admitted *pro hac vice*
     Troutman Sanders LLP
     P. O. Box 1122
     Richmond, Virginia 23218-1122
     (804) 697-1200
     FAX (804) 697-1339

     Attorneys for Defendant
     Hartford Life and Accident Insurance Company

<u>CERTIFICATE OF SERVICE</u>

     I hereby certify that I am attorney for Defendant and that on May _____, 2008, I electronically filed a copy of the foregoing with the Clerk of the Court and served a copy of the same by first class mail to the following:

TO:
Scott M. Riemer
60 East 42nd Street
Suite 2430
New York, NY 10165


Dated: New York, New York
    May _____, 2008



                                   Christina H. Bost Seaton (CB-7667)
                                   TROUTMAN SANDERS LLP
                                   The Chrysler Building
                                   405 Lexington Avenue
                                   New York, New York 10174
                                   (212) 704-6000


#1725242