UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JULIE JACOBY,

                    Plaintiff,


          -against-                                          07 Civ. 4627 (LAK)


HARTFORD LIFE AND ACCIDENT INSURANCE
COMPANY,

                    Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED #: 1/23/09

**ORDER**


LEWIS A. KAPLAN, *District Judge.*

          Plaintiff moves for an order compelling production of documents responsive to two requests and answers to interrogatories as well as enlarging the discovery period in light of defendant's failure to make any meaningful discovery thus far in the action.

          Defendant responded to plaintiff's two document requests and interrogatories with boilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy. It fact produced no documents and answered no interrogatories. Its responses are a paradigm of discovery abuse.

          Now, in response to plaintiff's motion to compel, defendant points to the fact that there was a meeting between counsel on December 19, 2008 at which, it claims, it then agreed to produce much of the requested information. It further asserts that plaintiff's counsel "appeared to agree" to certain limitations on its requests. It is undisputed, however, that defendant still has produced to discovery at all. Plaintiff's counsel, moreover, denies that there was any agreement that limited plaintiff's right to seek the rest of the discovery she sought.

          A number of the issues tendered by the motion papers are susceptible of swift resolution by the Court as follows:

          1.     All of defendant's claims of undue burden are unsubstantiated and overruled. Defendant may not fail to produce any requested document on that ground.

2.      Defendant's contention that it should not be ordered to produce certain requested materials because defendant does not possess them is insufficient and, in any case, beside the point. Defendant is obliged to produce requested materials that are within its possession, custody or control, not merely those within its possession. *See, e.g., United States v. Stein,* 488 F. Supp.2d 350, 360-64 (S.D.N.Y. 2007); *In re NTL Secur. Litig.,* Nos. 02 Civ. 3013(LAK)(AJP), 7377(LAK)(AJP), 2007 WL 241344, at *16-*17 (S.D.N.Y. Jan. 30, 2007) (Peck, M.J.); *In re Auction Houses Antitrust Litig.,* 196 F.R.D. 444 (S.D.N.Y.2000). More broadly, an assertion that requested materials are not in the possession, custody or control of a party is not a valid objection to a discovery request for the simple reason that the Federal Rules do not require production of such materials. Rather, such an assertion is pertinent in defense of a charge by the requesting party that the requested party improperly failed to produce requested materials. Accordingly, this objection too is overruled. The question whether defendant does not possess, have custody of or control any requested materials can be dealt with if, as and when plaintiff contends that it has improperly failed to produce.

3.      Defendant's contention that "[a]n appropriate protective order is necessary before [its BMS Claims Manual and SIU Reference Manual] are produced" is without merit in light of its failure even to offer an explanation as to why that is so. Moreover, plaintiff has pointed out that these documents already were produced in another action without benefit of any protective order and, for this and other reasons, are not confidential. Defendant shall produce them.

4.      Plaintiff seeks an order compelling Hartford to obtain and produce certain materials from UDC and MAG, entities that Hartford asserts are "independent third parties, over whom Hartford has no control." It is far from clear that Hartford's contention that it has no control over these entities is consistent with the facts. In denying summary judgment, I referred to evidence in another litigation that UDC in a recent year derived about 75 percent of its revenues from Hartford, and there plainly is a significant relationship between each of these entities and the defendant. That of course does not alone prove that Hartford controls either. But it does suggest the real possibility that a serious effort by Hartford to use such influence as it may have would result in production of all or some of the requested material without the need for satellite litigation in Massachusetts, where one or both of these entities apparently are located. In these circumstances, Hartford is directed to cause the production of the requested materials that are in the hands of UDC and MAG. Should it fail to do so, and should plaintiff press the point, a hearing concerning the relationships between Hartford and each of these entities and the nature of Hartford's efforts to secure their cooperation could prove necessary. *See generally In re Auction Houses Antitrust Litig.,* 196 F.R.D. 444 (compelling corporation to answer interrogatories by, among other things, furnishing information in the hands of a former officer, but leaving the question whether sanctions should be imposed for any failure to do so for later determination if necessary). Of course, plaintiff may wish to consider whether seeking enforcement of its outstanding subpoenas to UDC and MAG might achieve her desired result more quickly and certainly that pursuing this issue with Hartford.

Apart from these fundamental issues, the parties' papers leave unclear the extent of the remaining disagreements between the parties. Accordingly, counsel are directed to meet and

3

confer within one week and to submit to the Court an itemized list of unresolved discovery issues with a brief statement of their respective positions on each. The Court will hear the parties on any such issues on February 6, 2009 at 9:00 a.m.

In view of the fact that the requested extension of discovery has been sought by plaintiff only because defendant, UDC and MAG have not complied with its discovery requests, the deadline for completion of discovery by the plaintiff is extended until March 31, 2009. No one has suggested that defendant needs any extension, let alone a justification for it. So I decline to extend defendant's time for the conduct of discovery.

Plaintiff's motion to compel and for other relief [docket item 42] is granted to the extent that:

(a)  Defendant's objections based on alleged undue burden all are overruled. Defendant may not decline to answer any interrogatory or produce any requested document on that ground.

(b)  Defendant's objections based on claims that requested documents or information are not within its possession, custody or control all are overruled. Defendant may not decline to answer any interrogatory or produce any requested document on that ground. This is without prejudice to any contention by the defendant that sanctions should not be imposed because a failure to answer or produce was justified because the requested information or documents were not within its possession, custody or control.

(c)  Defendant shall produce the BMS Claims Manual and SIU Reference Manual and all documents that it agreed on December 19, 2008 to produce no later than January 30, 2009.

(d)  Defendant, no later than January 30, 2009, shall respond fully to all interrogatories to which it agreed on December 19, 2008 that it would respond.

(e)  Defendant's objection to being ordered to produce documents in the possession of UDC and MAC is overruled on the basis set forth above. Those documents shall be produced no later than January 30, 2009. This is without prejudice to any contention by the defendant that sanctions for the failure to do so should not be imposed because the requested documents were not within its possession, custody or control.

It is denied in all other respects, albeit without prejudice as indicated above.

While the Court, in the exercise of discretion, will not impose sanctions on defendant

4

for necessitating this motion, despite the fact that at least a significant number of its positions were not substantially justified, defendant would be well advised to avoid meritless efforts to avoid or stall discovery in the future.

SO ORDERED.

Dated:        January 23, 2009

Lewis A. Kaplan
United States District Judge

RIEMER & ASSOCIATES LLC
Attorneys for Plaintiff
Office and Post Office Address
60 East 42nd Street, Suite 2430
New York, New York  10165
(212) 297-0700

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JULIE JACOBY                                                    07 Civ 4627 (LAK)(RLE)

                           Plaintiff,                           PLAINTIFF'S FOURTH REQUEST
                                                                FOR PRODUCTION
               -against-                                        <u>OF DOCUMENTS</u>

HARTFORD LIFE AND ACCIDENT INSURANCE
COMPANY

                           Defendant.
-----------------------------------------------------------------X

        PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. Rule 34, Plaintiff

requests that defendant produce the following writings and things within the possession, custody

or control of defendant, its representatives, agents, employees or attorneys for inspection and

copying at the offices of Riemer & Associates LLC, 60 East 42nd Street, Suite 2430, New York,

New York 10165, on or before February 21, 2009, at 10:00 a.m.


                           <u>Definitions and Instructions</u>

        A.    This request is governed by and incorporates by reference Rule 26.3 of

the Civil Rules of the Southern District of New York.

        B.    The term "document" has the broadest meaning allowable under Fed.

R. Civ. P. Rule 34(a) and Rule 26.3 of the Civil Rules of the Southern District of New York.

C. "Hartford" means defendant Hartford Life and Accident Insurance Company, its committees, its predecessors, successors, parents or subsidiaries, affiliates, or segments or divisions, and its present or former employees, agents, attorneys, accountants, officers, directors, trustees, or trustees in bankruptcy.

D. "Communication" means any correspondence, contact, discussion or exchange between any two or more persons or entities. Without limiting the foregoing, "communication" includes all documents, telephone conversations, e-mail, or face-to-face conversations, meetings and conferences.

E. "Plan" means GSCP (NJ) LP Long Term Disability Plan and any policy funding or forming a part thereof, its predecessors, successors, parents or subsidiaries, affiliates, or segments or divisions, and its present or former employees, agents, attorneys, accountants, officers, directors, trustees, or trustees in bankruptcy.

G. Terms in the plural include the singular and terms in the singular include the plural. "And" includes the word "or" and "or" includes the word "and." "All" includes the word "any" and "any" includes the word "all". The use of one gender shall include the other as appropriate in the context.

H. In responding to this request, you are expected to comply with Local Rule 26.2 for each document responsive to this request withheld pursuant to a claim of privilege or work product.

I. These document requests are to be deemed to be continuing.

J. Unless otherwise specified, the relevant time period of this request is January 1, 2002 to present.

<u>Documents Requested</u>

1.     Any documents that evidence, record, reflect or refer to financial reports of Hartford's disability insurance business that demonstrate the assets, liabilities, profits and losses for that business for the years 2005, 2006 and 2007.

2.     Any documents, excluding performance evaluations that have already been produced, that evidence, record, reflect and refer to the tier, grade, salary range and bonus structure for the following titles – SIU Medical Case Manager (I and II); SIU Clinical Case Manager; Investigative Analyst; Claim Examiner (IV); and Appeal Specialist.

3.     Any documents that evidence, record, reflect or refer to the compensation levels and structures for any and all positions within the disability groups of Hartford from examiner and appeals specialist through the highest officer at Hartford in charge of Hartford's long term disability business, including, but not limited to – (a) Examiner; (b) Analyst; (c) Specialist; (d) QA; (e) MCM; (f) Case Manager; (g) Claim Specialist; (h) LTD Claim Specialist; (i) Service Specialist; (j) Project Consultant; (k) Ability Analyst; (l) LTD Ability Analyst; (m) Sr. Ability Analyst; (n) Appeal Specialist; (o) Sr. Appeal Specialist; (p) Team Leader; (q) Team Leader, LTD; (r) Manager; (s) Assistant Director; (t) Assistant Director, LTD; (u) Director; (v) Director, LTD; (w) Director LTD Claim Practices; (x) Director, Appeals; (y) Director, SIU; (z) AVP; (aa) AVP Claim Operations; (ab) AVP, Risk Management and Business Program Lead; (ac) SIU Director; (ad) Regional Vice President; (ae) Vice President; (af) Vice President GBD Claims.

Dated: New York, New York
       February 9, 2009

                                       RIEMER & ASSOCIATES LLC
                                       Attorneys for Plaintiff
                                       60 East 42nd Street, Suite 2430
                                       New York, New York  10165
                                       (212) 297-0700

                                       By:_____
                                           Scott M. Riemer (SR5005)

TO:    David E. Constine, III, Esq.
        Troutman Sanders LLP
        1001 Haxall Point
        P.O. Box 1122
        Richmond VA  23218-1122

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I am attorney for Plaintiff and that on February 9, 2009, I caused to be served by first class mail a true and correct copy of PLAINTIFF'S FOURTH REQUEST FOR PRODUCTION OF DOCUMENTS to the following:

David E. Constine, III, Esq.
Troutman Sanders LLP
1001 Haxall Point
P.O. Box 1122
Richmond VA  23218-1122

Dated: New York, New York
      February 9, 2009

                                  _____
                                  SCOTT M. RIEMER (SR5005)
                                  60 East 42nd Street, Suite 2430
                                  New York, New York  10165
                                  (212) 297-0700

PHILLIPS & ANGLEY

ATTORNEYS AND COUNSELLORS AT LAW
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS
ONE BOWDOIN SQUARE
BOSTON, MASSACHUSETTS 02114
(617) 367-8787
TELECOPIER (617) 227-8992

JEFFREY J. PHILLIPS, P.C.
JEFFREY T. ANGLEY, P.C.
JONATHAN M. FEIGENBAUM*
CHRISTOPHER S. TOLLEY
DANIEL TREGER
KRISTEN M. PLOETZ
KATE G. WEINSTEIN

*ALSO ADMITTED IN DC AND CA

NORWELL OFFICE
150 LONGWATER DRIVE
NORWELL, MA 02061
(781) 982-7272
TELECOPIER (781) 982-7202

December 24, 2008

David E. Constine III, Esquire
Troutman Sanders LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
**david.constine@troutmansanders.com**

Scott M. Riemer, Esq.
Riemer & Associates, LLC
60 East 42nd Street
Suite 2430
New York, NY 10165
**sriemer@riemerlawfirm.com**

RE:    Jacoby v. Hartford
       United District Court For the District of Massachusetts  - Southern District of New
       York, Case No.: 07-04627

Gentlemen:

       Enclosed you will Notice of Depositions and Subpoenas for: (1) Medical Advisory
Group, L.L.C.; (2) University Disability Consortium, P.C.; and (3) William Sniger.

                                        Very truly yours,

                                        Jonathan M. Feigenbaum

JMF/mf
Enclosure
L:\LITG\Jjac001\riemer.constine.l12.24.08.wpd

AO88 (Rev. 12/07) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### District of Massachusetts

Julie Jacoby

V.

Hartford Life and Accident Insurance Company

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 07-04627-LAK

TO:  Medical Advisory Group, L.L.C.
2 Wilder Drive, Unit 3
Plaistow, NH 03865

☐ **YOU ARE COMMANDED** to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑ **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION   Phillips & Angley, One Bowdoin Square, Boston, MA 02114 | DATE AND TIME  1/15/2009 2:00 pm |
|---|---|

☑ **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Phillips & Angley, One Bowdoin Square, Boston, MA 02114
Documents are set forth on the attached EXHIBIT A

| PLACE   Phillips & Angley, One Bowdoin Square, Boston, MA 02114 | DATE AND TIME  1/15/2009 2:00 pm |
|---|---|

☐ **YOU ARE COMMANDED** to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)  Attorney for Plaintiff | DATE  12/24/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jonathan M. Feigenbaum, Phillips & Angley, One Bowdoin Square, Boston, MA 02114, 617-367-8787

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev. 12/07) Subpoena in a Civil Case (Page 2)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.
(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
(2) Command to Produce Materials or Permit Inspection.
(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
(3) Quashing or Modifying a Subpoena.
(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information;
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) DUTIES IN RESPONDING TO A SUBPOENA.
(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) Claiming Privilege or Protection.
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

1. A copy of all files, and all documents contained therein, maintained by Medical Advisory Group, L.L.C. ("MAG") with respect to Jacoby.
2. All communications of any kind, including emails and instant messages, that reference or pertain to Jacoby.
3. A copy of all files, and all documents contained therein, maintained by MAG with respect to Richard Levy, M.D.
4. A copy of all files, and all documents contained therein, maintained by MAG with respect to Jerome Siegel, M.D.
5. A copy of all files, and all documents contained therein, maintained by MAG with respect to Pedro Jose Garrido-Castillo, Ph.D.
6. A copy of all files, and all documents contained therein, maintained by MAG with respect to William Sniger, M.D.
7. A copy of all files, and all documents contained therein, maintained by MAG with respect the contract with Hartford.
8. A copy of all marketing materials disclosed in any litigation.
9. All reports, letters and/or evaluations written by Richard Levy, M.D. (including without limitation any computer or on-line based document) that evidence, record, reflect or refer to examinations, reviews and/or studies conducted in the years 2005 through 2008, of Hartford claimants. To protect the privacy of Hartford's claimants, MAG may redact the names and social security numbers of all such claimants.
10. All reports, letters and/or evaluations written by Jerome Siegel, M.D. (including without limitation any computer or on-line based document) that evidence, record, reflect or refer to examinations, reviews and/or studies conducted in the years 2005 through 2008, of Hartford claimants. To protect the privacy of Hartford's claimants, MAG may redact the names and social security numbers of all such claimants.
11. All reports, letters and/or evaluations written by Pedro Jose Garrido-Castillo, Ph.D. (including without limitation any computer or on-line based document) that evidence, record, reflect or refer to examinations, reviews and/or studies conducted in the years 2005 through 2008, of Hartford claimants. To protect the privacy of Hartford's claimants, MAG may redact the names and social security numbers of all such claimants.
12. All reports, letters and/or evaluations written by William Sniger, M.D. (including without limitation any computer or on-line based document) that evidence, record, reflect or refer to examinations, reviews and/or studies conducted in the years 2005 through 2008, of Hartford claimants. To protect the privacy of Hartford's claimants, MAG may redact the names and social security numbers of all such claimants.
13. All ratings and/or performance evaluations of Richard Levy, M.D. prepared by MAG and/or Hartford for the years 2005 through 2008.
14. All ratings and/or performance evaluations of Jerome Siegel, M.D. prepared by MAG and/or Hartford for the years 2005 through 2008.
15. All ratings and/or performance evaluations of Pedro Jose Garrido-Castillo, Ph.D. prepared by MAG and/or Hartford for the years 2005 through 2008.
16. All ratings and/or performance evaluations of William Sniger, M.D. prepared by MAG and/or Hartford for the years 2005 through 2008.
17. MAG's document retention policy for the years 2005 through 2008.
18. Documents evidencing payments made to Richard Levy, M.D. for the period from 2005 through 2008.

19. Documents evidencing payments made to Jerome Siegel, M.D. for the period from 2005 through 2008.

20. Documents evidencing payments made to Pedro Jose Garrido-Castillo, Ph.D. for the period from 2005 through 2008.

21. Documents evidencing payments made to William Sniger, M.D. for the period from 2005 through 2008.

22. Documents evidencing the number of examinations, reviews and/or studies conducted by Richard Levy, M.D. in the years 2005 through 2008.

23. Documents evidencing the number of examinations, reviews and/or studies conducted by Jerome Siegel, M.D. in the years 2005 through 2008.

24. Documents evidencing the number of examinations, reviews and/or studies conducted by Pedro Jose Garrido-Castillo, Ph.D. in the years 2005 through 2008.

25. Documents evidencing the number of examinations, reviews and/or studies conducted by William Sniger, M.D. in the years 2005 through 2008.

26. Documents evidencing the hourly rates charged by Richard Levy, M.D. in the years 2005 through 2008.

27. Documents evidencing the hourly rates charged by Jerome Siegel, M.D. in the years 2005 through 2008.

28. Documents evidencing the hourly rates charged by Pedro Jose Garrido-Castillo, Ph.D. in the years 2005 through 2008.

29. Documents evidencing the hourly rates charged by William Sniger, M.D. in the years 2005 through 2008.

30. Documents evidence the hourly rates charged by MAG to The Hartford for reviews by Richard Levy, M.D., Jerome Siegel, M.D., Pedro Jose Garrido-Castillo, Ph.D., William Sniger, M.D.

31. Documents evidencing the hourly rates charged by MAG to insurance carriers other than The Hartford.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULIE JACOBY | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) CIVIL ACTION NO.  07-04627-LAK |
| | ) |
| HARTFORD LIFE AND ACCIDENT | ) |
| INSURANCE COMPANY | ) |
| Defendant | ) |
| | ) |
| | ) |

## PLAINTIFF'S
## RULE 30(b)(2),(3) AND (6) DEPOSITION NOTICE TO
## MEDICAL ADVISORY GROUP L.L.C

To:    David E. Constine III, Esquire
       Troutman Sanders
       Troutman Sanders LLP
       P.O. Box 1122
       Richmond, Virginia  23218-1122
       david.constine@troutmansanders.com

       Scott M. Riemer, Esq.
       Riemer & Associates, LLC
       60 East 42nd Street
       Suite 2430
       New York, NY 10165
       sriemer@riemerlawfirm.com

Please take notice that on **January 15, 2009 at 2:00 p.m.** the undersigned,

counsel to the Plaintiff will take the deposition(s) of one or more officers, directors, or

managing agents, or other designated persons to testify on behalf of Medical Advisory

Group, L.L.C. ("Deponent" hereinafter) pursuant to Fed.R.Civ.P., Rule 30(b)(2) ,(3) and

(6), on cross examination, on oral interrogatories, before Notary Public and certified

shorthand reporter, and by visual means, for all purposes permitted under the Federal Rules of Civil Procedure.

The person(s) so designated under Fed.R.Civ.P. Rule 30(b)(6) by the Deponent shall testify as to the following matters known or reasonably available to the Deponent as relating to the documents set forth in Section A below.

The deposition shall be conducted at Phillips & Angley, One Bowdoin Square, Boston, MA 02114

## SECTION A

1. A copy of all files, and all documents contained therein, maintained by Medical Advisory Group, L.L.C. ("MAG") with respect to Jacoby.
2. All communications of any kind, including emails and instant messages, that reference or pertain to Jacoby.
3. A copy of all files, and all documents contained therein, maintained by MAG with respect to Richard Levy, M.D.
4. A copy of all files, and all documents contained therein, maintained by MAG with respect to Jerome Siegel, M.D.
5. A copy of all files, and all documents contained therein, maintained by MAG with respect to Pedro Jose Garrido-Castillo, Ph.D.
6. A copy of all files, and all documents contained therein, maintained by MAG with respect to William Sniger, M.D.
7. A copy of all files, and all documents contained therein, maintained by MAG with respect the contract with Hartford.
8. A copy of all marketing materials disclosed in any litigation.
9. All reports, letters and/or evaluations written by Richard Levy, M.D. (including without limitation any computer or on-line based document) that evidence, record, reflect or refer to examinations, reviews and/or studies conducted in the years 2005 through 2008, of Hartford claimants. To protect the privacy of Hartford's claimants, MAG may redact the names and social security numbers of all such claimants.
10. All reports, letters and/or evaluations written by Jerome Siegel, M.D. (including without limitation any computer or on-line based document) that evidence, record, reflect or refer to examinations, reviews and/or studies conducted in the years 2005 through 2008, of Hartford claimants. To protect the privacy of Hartford's claimants, MAG may redact the names and social security numbers of all such claimants.
11. All reports, letters and/or evaluations written by Pedro Jose Garrido-Castillo, Ph.D. (including without limitation any computer or on-line based document) that

evidence, record, reflect or refer to examinations, reviews and/or studies conducted in the years 2005 through 2008, of Hartford claimants. To protect the privacy of Hartford's claimants, MAG may redact the names and social security numbers of all such claimants.

12. All reports, letters and/or evaluations written by William Sniger, M.D. (including without limitation any computer or on-line based document) that evidence, record, reflect or refer to examinations, reviews and/or studies conducted in the years 2005 through 2008, of Hartford claimants. To protect the privacy of Hartford's claimants, MAG may redact the names and social security numbers of all such claimants.

13. All ratings and/or performance evaluations of Richard Levy, M.D. prepared by MAG and/or Hartford for the years 2005 through 2008.

14. All ratings and/or performance evaluations of Jerome Siegel, M.D. prepared by MAG and/or Hartford for the years 2005 through 2008.

15. All ratings and/or performance evaluations of Pedro Jose Garrido-Castillo, Ph.D. prepared by MAG and/or Hartford for the years 2005 through 2008.

16. All ratings and/or performance evaluations of William Sniger, M.D. prepared by MAG and/or Hartford for the years 2005 through 2008.

17. MAG's document retention policy for the years 2005 through 2008.

18. Documents evidencing payments made to Richard Levy, M.D. for the period from 2005 through 2008.

19. Documents evidencing payments made to Jerome Siegel, M.D. for the period from 2005 through 2008.

20. Documents evidencing payments made to Pedro Jose Garrido-Castillo, Ph.D. for the period from 2005 through 2008.

21. Documents evidencing payments made to William Sniger, M.D. for the period from 2005 through 2008.

22. Documents evidencing the number of examinations, reviews and/or studies conducted by Richard Levy, M.D. in the years 2005 through 2008.

23. Documents evidencing the number of examinations, reviews and/or studies conducted by Jerome Siegel, M.D. in the years 2005 through 2008.

24. Documents evidencing the number of examinations, reviews and/or studies conducted by Pedro Jose Garrido-Castillo, Ph.D. in the years 2005 through 2008.

25. Documents evidencing the number of examinations, reviews and/or studies conducted by William Sniger, M.D. in the years 2005 through 2008.

26. Documents evidencing the hourly rates charged by Richard Levy, M.D. in the years 2005 through 2008.

27. Documents evidencing the hourly rates charged by Jerome Siegel, M.D. in the years 2005 through 2008.

28. Documents evidencing the hourly rates charged by Pedro Jose Garrido-Castillo, Ph.D. in the years 2005 through 2008.

29. Documents evidencing the hourly rates charged by William Sniger, M.D. in the years 2005 through 2008.

30. Documents evidence the hourly rates charged by MAG to The Hartford for reviews by Richard Levy, M.D., Jerome Siegel, M.D., Pedro Jose Garrido-Castillo, Ph.D., William Sniger, M.D.

31. Documents evidencing the hourly rates charged by MAG to insurance carriers other than The Hartford.


The Plaintiff,
JULIE JACOBY
By her attorneys,


Jonathan M. Feigenbaum, Esq.
B.B.O. #54668
Phillips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No. (617) 367-8787

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing to all parties or their counsel of record this day by mail and email.

DATED: December 24, 2008


L:/litg/jjac001\depo.notice30(b)(6).mag

LIFE AND ACCIDENT AND HEALTH COMPANIES - ASSOCIATION EDITION



# ANNUAL STATEMENT

For the Year Ended December 31, 2007
of the Condition and Affairs of the

# HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY

NAIC Group Code.....0091,  0091
   (Current Period) (Prior Period)

NAIC Company Code..... 70815

Employer's ID Number..... 06-0838648

Organized under the Laws of CONNECTICUT

State of Domicile or Port of Entry  CONNECTICUT

Country of Domicile    US

Incorporated/Organized..... February 14, 1967

Commenced Business..... February 14, 1967

Statutory Home Office
200 HOPMEADOW STREET..... SIMSBURY ..... CT ..... 06089
*(Street and Number)     (City or Town, State and Zip Code)*

Main Administrative Office
200 HOPMEADOW STREET..... SIMSBURY ..... CT ..... 06089
*(Street and Number)     (City or Town, State and Zip Code)*
860-547-5000
*(Area Code) (Telephone Number)*

Mail Address
ONE HARTFORD PLAZA..... HARTFORD ..... CT ..... 06115
*(Street and Number or P. O. Box)     (City or Town, State and Zip Code)*

Primary Location of Books and Records
200 HOPMEADOW STREET..... SIMSBURY ..... CT ..... 06089
*(Street and Number)     (City or Town, State and Zip Code)*
860-547-5000
*(Area Code) (Telephone Number)*

Internet Website Address
WWW.THEHARTFORD.COM

Statutory Statement Contact
MICHAEL J WASIK
*(Name)*
860-843-4916
*(Area Code) (Telephone Number) (Extension)*

Michael.Wasik@hartfordlife.com
*(E-Mail Address)*
860-843-3057
*(Fax Number)*

## OFFICERS

| Name | Title | Name | Title |
|---|---|---|---|
| 1. LIZABETH HERBST ZLATKUS # | President, CEO & COB | 2. RICHARD GIBSON COSTELLO | VP & Secretary |
| 3. ERNEST MALCOLM MCNEILL, JR. | SVP & Chief Accounting Officer | 4. CRAIG DOUGLAS MORROW # | AVP &  Appointed Actuary |

### OTHER

| | | | |
|---|---|---|---|
| RICARDO ARTURO ANZALDUA # | SVP & Assistant Secretary | DAVID ALAN CARLSON | SVP & Director of Taxes |
| JAMES FREDERICK CASEY | Senior Vice President | MICHAEL BERNARD CEFOLE | Vice President |
| TIMOTHY MICHAEL FITCH | Senior Vice President | JENNIFER JILL GEISLER | Senior Vice President |
| RONALD RICHARD GENDREAU | Senior Vice President | JOHN NICHOLAS GIAMALIS | SVP & Treasurer |
| CHRISTOPHER JAMES HANLON | Senior Vice President | MICHAEL LAURENCE KALEN | Executive Vice President |
| ALAN JAMES KRECZKO # | EVP & General Counsel | GLENN DAVID LAMMEY | CFO & Executive Vice President |
| WILLIAM PATRICK MEANEY | Senior Vice President | BRIAN DENNIS MURPHY # | Executive Vice President |
| CRAIG RODOLPH RAYMOND | Senior Vice President | JOE MCKEE THOMSON | Senior Vice President |
| JOHN CLINTON WALTERS | Executive Vice President | DAVID MARK ZNAMIEROWSKI | EVP & Chief Investment Officer |

### DIRECTORS OR TRUSTEES

| | | | |
|---|---|---|---|
| GLENN DAVID LAMMEY | JOHN CLINTON WALTERS | LIZABETH HERBST ZLATKUS | DAVID MARK ZNAMIEROWSKI |

State of........    CONNECTICUT
County of.....    HARTFORD

The officers of this reporting entity being duly sworn, each depose and say that they are the described officers of said reporting entity, and that on the reporting period stated above, all of the herein described assets were the absolute property of the said reporting entity, free and clear from any liens or claims thereon, except as herein stated, and that this statement, together with related exhibits, schedules and explanations therein contained, annexed or referred to, is a full and true statement of all the assets and liabilities and of the condition and affairs of the said reporting entity as of the reporting period stated above, and of its income and deductions therefrom for the period ended, and have been completed in accordance with the NAIC *Annual Statement Instructions* and *Accounting Practices and Procedures manual* except to the extent that: (1) state law may differ; or, (2) state rules or regulations require differences in reporting not related to accounting practices and procedures, according to the best of their information, knowledge and belief, respectively. Furthermore, the scope of this attestation by the described officers also includes the related corresponding electronic filing with the NAIC, when required, that is an exact copy of the enclosed statement (except for formatting differences due to electronic filing). The electronic filing may be requested by various regulators in lieu of or in addition to the enclosed statement.

| *(Signature)* | *(Signature)* | *(Signature)* |
|---|---|---|
| LIZABETH HERBST ZLATKUS # | RICHARD GIBSON COSTELLO | ERNEST MALCOLM MCNEILL, JR. |
| 1. (Printed Name) | 2. (Printed Name) | 3. (Printed Name) |
| President, CEO & COB | VP & Secretary | SVP & Chief Accounting Officer |
| (Title) | (Title) | (Title) |

Subscribed and sworn to before me

This _____ 8th _____ day of _____ February, 2008

a. Is this an original filing?   Yes [ X ]    No [  ]

b. If no  1. State the amendment number

        2. Date filed

        3. Number of pages attached

Annual Statement for the year 2007 of the **HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY**

# ASSETS

| | Current Year | | | Prior Year |
|---|---|---|---|---|
| | 1 | 2 | 3 | 4 |
| | | | Net Admitted | |
| | | Nonadmitted | Assets | Net |
| | Assets | Assets | (Cols. 1 - 2) | Admitted Assets |
| 1. Bonds (Schedule D) | 6,143,799,779 | | 6,143,799,779 | 6,594,684,681 |
| 2. Stocks (Schedule D): | | | | |
| 2.1 Preferred stocks | 951,798,011 | | 951,798,011 | 722,647,179 |
| 2.2 Common stocks | 4,926,719,982 | 19,356,830 | 4,907,363,152 | 3,754,675,876 |
| 3. Mortgage loans on real estate (Schedule B): | | | | |
| 3.1 First liens | 516,120,091 | | 516,120,091 | 254,820,189 |
| 3.2 Other than first liens | 56,918,766 | | 56,918,766 | 23,718,969 |
| 4. Real estate (Schedule A): | | | | |
| 4.1 Properties occupied by the company (less $.........0 encumbrances) | | | 0 | |
| 4.2 Properties held for the production of income (less $.........0 encumbrances) | | | 0 | |
| 4.3 Properties held for sale (less $.........0 encumbrances) | | | 0 | |
| 5. Cash ($.....26,819,262, Sch. E-Part 1), cash equivalents ($.....6,688,788, Sch. E-Part 2) and short-term investments ($.....409,164,194, Sch. DA) | 442,672,244 | | 442,672,244 | 486,918,416 |
| 6. Contract loans (including $.........0 premium notes) | 40,515,439 | | 40,515,439 | 38,016,994 |
| 7. Other invested assets (Schedule BA) | 458,298,445 | 7,916,889 | 450,381,556 | 372,543,098 |
| 8. Receivables for securities | 45,881 | | 45,881 | 27,552,891 |
| 9. Aggregate write-ins for invested assets | 15,245,624 | 0 | 15,245,624 | 9,789,896 |
| 10. Subtotals, cash and invested assets (Lines 1 to 9) | 13,552,134,262 | 27,273,719 | 13,524,860,543 | 12,285,368,189 |
| 11. Title plants less $.........0 charged off (for Title insurers only) | | | 0 | |
| 12. Investment income due and accrued | 89,674,975 | | 89,674,975 | 97,357,776 |
| 13. Premiums and considerations: | | | | |
| 13.1 Uncollected premiums and agents' balances in course of collection | 384,621,177 | 20,137,096 | 364,484,081 | 354,542,428 |
| 13.2 Deferred premiums, agents' balances and installments booked but deferred and not yet due (including $.........0 earned but unbilled premiums) | 1,043,345 | | 1,043,345 | 1,204,902 |
| 13.3 Accrued retrospective premiums | | | 0 | |
| 14. Reinsurance: | | | | |
| 14.1 Amounts recoverable from reinsurers | 27,212,003 | | 27,212,003 | 26,648,166 |
| 14.2 Funds held by or deposited with reinsured companies | 6,614,577 | | 6,614,577 | |
| 14.3 Other amounts receivable under reinsurance contracts | 2,934,509 | | 2,934,509 | 4,604,016 |
| 15. Amounts receivable relating to uninsured plans | 5,574,203 | | 5,574,203 | 8,947,743 |
| 16.1 Current federal and foreign income tax recoverable and interest thereon | | | 0 | 4,885,598 |
| 16.2 Net deferred tax asset | 115,224,456 | 61,748,046 | 53,476,410 | 44,533,720 |
| 17. Guaranty funds receivable or on deposit | 814,271 | | 814,271 | 739,017 |
| 18. Electronic data processing equipment and software | 173,420,895 | 148,353,784 | 25,067,111 | 27,122,405 |
| 19. Furniture and equipment, including health care delivery assets ($.........0) | 16,662,517 | 16,662,517 | 0 | |
| 20. Net adjustment in assets and liabilities due to foreign exchange rates | | | 0 | |
| 21. Receivables from parent, subsidiaries and affiliates | 85,046,826 | 2,603,192 | 82,443,634 | 74,208,822 |
| 22. Health care ($.........0) and other amounts receivable | 8,351 | 8,351 | 0 | |
| 23. Aggregate write-ins for other than invested assets | 21,021,443 | 17,702,536 | 3,318,907 | 36,066,967 |
| 24. Total assets excluding Separate Accounts, Segregated Accounts and Protected Cell Accounts (Lines 10 to 23) | 14,482,007,810 | 294,489,241 | 14,187,518,569 | 12,966,229,749 |
| 25. From Separate Accounts, Segregated Accounts and Protected Cell Accounts | | | 0 | |
| 26. TOTALS (Lines 24 and 25) | 14,482,007,810 | 294,489,241 | 14,187,518,569 | 12,966,229,749 |

| DETAILS OF WRITE-INS | | | | |
|---|---|---|---|---|
| 0901. Derivative Instruments | 15,245,624 | | 15,245,624 | 9,789,896 |
| 0902. | | | 0 | |
| 0903. | | | 0 | |
| 0998. Summary of remaining write-ins for Line 9 from overflow page | 0 | 0 | 0 | 0 |
| 0999. Totals (Lines 0901 thru 0903 plus 0998) (Line 9 above) | 15,245,624 | 0 | 15,245,624 | 9,789,896 |
| 2301. Disbursements and items not allocated | 3,318,907 | | 3,318,907 | 36,066,967 |
| 2302. Other Assets Non-Admitted | 17,702,536 | 17,702,536 | 0 | |
| 2303. | | | 0 | |
| 2398. Summary of remaining write-ins for Line 23 from overflow page | 0 | 0 | 0 | 0 |
| 2399. Totals (Lines 2301 thru 2303 plus 2398) (Line 23 above) | 21,021,443 | 17,702,536 | 3,318,907 | 36,066,967 |

Annual Statement for the year 2007 of the **HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY**

## LIABILITIES, SURPLUS AND OTHER FUNDS

| | | 1<br>Current Year | 2<br>Prior Year |
|---|---|---|---|
| 1. | Aggregate reserve for life contracts $.....1,595,819,532 (Exhibit 5, Line 9999999) less $.........0 included in Line 6.3 (including $.........0 Modco Reserve) | 1,595,819,532 | 1,579,313,339 |
| 2. | Aggregate reserve for accident and health contracts (Exhibit 6, Line 17, Col. 1) (including $.........0 Modco Reserve) | 4,756,464,347 | 4,611,696,199 |
| 3. | Liability for deposit-type contracts (Exhibit 7, Line 14, Col. 1) (including $.........0 Modco Reserve) | 326,893,025 | 333,628,572 |
| 4. | Contract claims: | | |
| 4.1 | Life (Exhibit 8, Part 1, Line 4.4, Col. 1 less sum of Cols. 9, 10 and 11) | 272,538,288 | 274,992,751 |
| 4.2 | Accident and health (Exhibit 8, Part 1, Line 4.4, sum of Cols. 9, 10 and 11) | 235,504,725 | 236,999,427 |
| 5. | Policyholders' dividends $.........0 and coupons $.........0 due and unpaid (Exhibit 4, Line 10) | | |
| 6. | Provision for policyholders' dividends and coupons payable in following calendar year - estimated amounts: | | |
| 6.1 | Dividends apportioned for payment (including $.........0 Modco) | 45,171 | 40,742 |
| 6.2 | Dividends not yet apportioned (including $.........0 Modco) | | |
| 6.3 | Coupons and similar benefits (including $.........0 Modco) | | |
| 7. | Amount provisionally held for deferred dividend policies not included in Line 6 | | |
| 8. | Premiums and annuity considerations for life and accident and health contracts received in advance less $.........0 discount; including $.....1,496,116 accident and health premiums (Exhibit 1, Part 1, Col. 1, sum of Lines 4 and 14) | 2,798,747 | 1,138,388 |
| 9. | Contract liabilities not included elsewhere: | | |
| 9.1 | Surrender values on canceled contracts | | |
| 9.2 | Provision for experience rating refunds, including $.........0 accident and health experience rating refunds | 104,039,237 | 94,590,104 |
| 9.3 | Other amounts payable on reinsurance, including $.........0 assumed and $.........0 ceded | | |
| 9.4 | Interest Maintenance Reserve (IMR, Line 6) | 26,254,466 | 42,075,064 |
| 10. | Commissions to agents due or accrued - life and annuity contracts $.....6,613,652, accident and health $.....87,543,476 and deposit-type contract funds $.....3,020,334 | 97,177,462 | 86,096,173 |
| 11. | Commissions and expense allowances payable on reinsurance assumed | 13,672,268 | 23,355,831 |
| 12. | General expenses due or accrued (Exhibit 2, Line 12, Col. 6) | 97,353,334 | 103,043,211 |
| 13. | Transfers to Separate Accounts due or accrued (net) (including $.........0 accrued for expense allowances recognized in reserves, net of reinsured allowances) | | |
| 14. | Taxes, licenses and fees due or accrued, excluding federal income taxes (Exhibit 3, Line 9, Col. 5) | 16,711,707 | 20,426,216 |
| 15.1 | Current federal and foreign income taxes, including $.........0 on realized capital gains (losses) | 1,333,657 | |
| 15.2 | Net deferred tax liability | | |
| 16. | Unearned investment income | 1,228,593 | 1,161,320 |
| 17. | Amounts withheld or retained by company as agent or trustee | 1,554,822 | (223,034) |
| 18. | Amounts held for agents' account, including $.....1,032,941 agents' credit balances | 1,032,941 | 6,621,434 |
| 19. | Remittances and items not allocated | 170,718,819 | 227,826,143 |
| 20. | Net adjustment in assets and liabilities due to foreign exchange rates | | |
| 21. | Liability for benefits for employees and agents if not included above | | |
| 22. | Borrowed money $.........0 and interest thereon $.........0 | | |
| 23. | Dividends to stockholders declared and unpaid | | 76,000,000 |
| 24. | Miscellaneous liabilities: | | |
| 24.1 | Asset valuation reserve (AVR Line 16, Col. 7) | 99,950,227 | 140,860,236 |
| 24.2 | Reinsurance in unauthorized companies | 2,612,020 | 7,067,549 |
| 24.3 | Funds held under reinsurance treaties with unauthorized reinsurers | | |
| 24.4 | Payable to parent, subsidiaries and affiliates | 12,193,778 | 68,393,913 |
| 24.5 | Drafts outstanding | 54,975,835 | 66,016,001 |
| 24.6 | Liability for amounts held under uninsured plans | | |
| 24.7 | Funds held under coinsurance | 16,636,858 | 16,737,388 |
| 24.8 | Payable for securities | 23,476,389 | 8,131,513 |
| 24.9 | Capital notes $.........0 and interest thereon $.........0 | | |
| 25. | Aggregate write-ins for liabilities | 470,459,618 | 207,248,777 |
| 26. | Total liabilities excluding Separate Accounts business (Lines 1 to 25) | 8,401,445,865 | 8,233,237,257 |
| 27. | From Separate Accounts Statement | | |
| 28. | Total liabilities (Line 26 and 27) | 8,401,445,865 | 8,233,237,257 |
| 29. | Common capital stock | 2,500,000 | 2,500,000 |
| 30. | Preferred capital stock | | |
| 31. | Aggregate write-ins for other than special surplus funds | 0 | 0 |
| 32. | Surplus notes | | |
| 33. | Gross paid in and contributed surplus (Page 3, Line 33, Col. 2 plus Page 4, Line 51.1, Col. 1) | 2,568,354,375 | 2,604,849,034 |
| 34. | Aggregate write-ins for special surplus funds | 0 | |
| 35. | Unassigned funds (surplus) | 3,215,218,328 | 2,125,643,458 |
| 36. | Less treasury stock, at cost: | | |
| 36.1 | .....0.000 shares common (value included in Line 29 $.........0) | | |
| 36.2 | .....0.000 shares preferred (value included in Line 30 $.........0) | | |
| 37. | Surplus (Total Lines 31 + 32 + 33 + 34 + 35 - 36) (including $.........0 in Separate Accounts Statement) | 5,783,572,703 | 4,730,492,492 |
| 38. | Totals of Lines 29, 30 and 37 (Page 4, Line 55) | 5,786,072,703 | 4,732,992,492 |
| 39. | Totals of Lines 28 and 38 (Page 2, Line 26, Col. 3) | 14,187,518,569 | 12,966,229,749 |
| | **DETAILS OF WRITE-INS** | | |
| 2501. | Securities Lending Collateral | 357,207,832 | 155,759,553 |
| 2502. | Miscellaneous Liabilities | 67,245,797 | 32,899,558 |
| 2503. | Reserve for Rental Obligation | 45,850,571 | 18,443,581 |
| 2598. | Summary of remaining write-ins for Line 25 from overflow page | 155,418 | 146,085 |
| 2599. | Totals (Lines 2501 thru 2503 plus 2598) (Line 25 above) | 470,459,618 | 207,248,777 |
| 3101. | | | |
| 3102. | | | |
| 3103. | | | |
| 3198. | Summary of remaining write-ins for Line 31 from overflow page | 0 | 0 |
| 3199. | Totals (Lines 3101 thru 3103 plus 3198) (Line 31 above) | 0 | 0 |
| 3401. | | | |
| 3402. | | | |
| 3403. | | | |
| 3498. | Summary of remaining write-ins for Line 34 from overflow page | 0 | 0 |
| 3499. | Totals (Lines 3401 thru 3403 plus 3498) (Line 34 above) | 0 | 0 |

**3**

Annual Statement for the year 2007 of the   **HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY**

# SUMMARY OF OPERATIONS

| | 1<br>Current Year | 2<br>Prior Year |
|---|---|---|
| 1. Premiums and annuity considerations for life and accident and health contracts (Exhibit 1, Part 1, Line 20.4, Col. 1, less Col. 11) | 4,047,806,462 | 3,980,431,600 |
| 2. Considerations for supplementary contracts with life contingencies | 9,260 | 9,862 |
| 3. Net investment income (Exhibit of Net Investment Income, Line 17) | 945,556,253 | 789,061,369 |
| 4. Amortization of Interest Maintenance Reserve (IMR) (Line 5) | 6,732,601 | 12,076,944 |
| 5. Separate Accounts net gain from operations excluding unrealized gains or losses | | |
| 6. Commissions and expense allowances on reinsurance ceded (Exhibit 1, Part 2, Line 26.1, Col. 1) | 881,088 | 562,485 |
| 7. Reserve adjustments on reinsurance ceded | | |
| 8. Miscellaneous Income: | | |
| 8.1 Income from fees associated with investment management, administration and contract guarantees from Separate Accounts | | |
| 8.2 Charges and fees for deposit-type contracts | | |
| 8.3 Aggregate write-ins for miscellaneous income | 9,639,096 | 2,746,978 |
| 9. Totals (Lines 1 to 8.3) | 5,010,624,760 | 4,784,889,238 |
| 10. Death benefits | 862,547,461 | 865,601,935 |
| 11. Matured endowments (excluding guaranteed annual pure endowments) | 131,421 | 12,847 |
| 12. Annuity benefits (Exhibit 8, Part 2, Line 6.4, Cols. 4 + 8) | 16,343,459 | 16,417,869 |
| 13. Disability benefits and benefits under accident and health contracts | 1,849,529,520 | 1,754,435,425 |
| 14. Coupons, guaranteed annual pure endowments and similar benefits | | |
| 15. Surrender benefits and withdrawals for life contracts | 22,777,149 | 23,100,028 |
| 16. Group conversions | | |
| 17. Interest and adjustments on contract or deposit-type contract funds | 541,987 | 441,006 |
| 18. Payments on supplementary contracts with life contingencies | 17,349,749 | 9,231,538 |
| 19. Increase in aggregate reserves for life and accident and health contracts | 13,932 | 13,932 |
| 20. Totals (Lines 10 to 19) | 170,950,299 | 183,434,890 |
| | 2,940,184,917 | 2,852,689,470 |
| 21. Commissions on premiums, annuity considerations and deposit-type contract funds (direct business only) (Exhibit 1, Part 2, Line 31, Col. 1) | 396,026,881 | 393,368,166 |
| 22. Commissions and expense allowances on reinsurance assumed (Exhibit 1, Part 2, Line 26.2, Col. 1) | 162,040,838 | 146,979,228 |
| 23. General insurance expenses (Exhibit 2, Line 10, Columns 1, 2, 3 and 4) | 603,684,093 | 639,513,851 |
| 24. Insurance taxes, licenses and fees, excluding federal income taxes (Exhibit 3, Line 7, Cols. 1 + 2 + 3) | 84,759,535 | 84,525,107 |
| 25. Increase in loading on deferred and uncollected premiums | 67,502 | 87,289 |
| 26. Net transfers to or (from) Separate Accounts net of reinsurance | | |
| 27. Aggregate write-ins for deductions | 13,784,093 | 12,292,355 |
| 28. Totals (Lines 20 to 27) | 4,200,547,859 | 4,129,455,466 |
| 29. Net gain from operations before dividends to policyholders and federal income taxes (Line 9 minus Line 28) | 810,076,901 | 655,433,772 |
| 30. Dividends to policyholders | 213,031 | 182,411 |
| 31. Net gain from operations after dividends to policyholders and before federal income taxes (Line 29 minus Line 30) | 809,863,870 | 655,251,361 |
| 32. Federal and foreign income taxes incurred (excluding tax on capital gains) | 25,424,186 | 35,040,117 |
| 33. Net gain from operations after dividends to policyholders and federal income taxes and before realized capital gains or (losses) (Line 31 minus Line 32) | 784,439,684 | 620,211,244 |
| 34. Net realized capital gains or (losses) (excluding gains (losses) transferred to the IMR) less capital gains tax of $....7,376,515 excluding taxes of $....(984,651) transferred to the IMR) | (7,686,970) | 24,238,749 |
| 35. Net income (Line 33 plus Line 34) | 776,752,714 | 644,449,993 |

## CAPITAL AND SURPLUS ACCOUNT

| | | |
|---|---|---|
| 36. Capital and surplus, December 31, prior year (Page 3, Line 38, Col. 2) | 4,732,992,492 | 4,347,533,373 |
| 37. Net income (Line 35) | 776,752,714 | 644,449,993 |
| 38. Change in net unrealized capital gains (losses) less capital gains tax of $....(9,026,037) | 797,552,161 | 162,530,606 |
| 39. Change in net unrealized foreign exchange capital gain (loss) | | |
| 40. Change in net deferred income tax | 54,807,782 | (34,533,974) |
| 41. Change in nonadmitted assets and related items | (126,632,638) | (792,864) |
| 42. Change in liability for reinsurance in unauthorized companies | 4,455,529 | 172,397 |
| 43. Change in reserve on account of change in valuation basis, (increase) or decrease (Exhibit 5A, Line 9999999, Col. 4) | | |
| 44. Change in asset valuation reserve | 40,910,009 | (126,501,014) |
| 45. Change in treasury stock, (Page 3, Lines 36.1 and 36.2 Col. 2 minus Col. 1) | | |
| 46. Surplus (contributed to) withdrawn from Separate Accounts during period | | |
| 47. Other changes in surplus in Separate Accounts Statement | | |
| 48. Change in surplus notes | | |
| 49. Cumulative effect of changes in accounting principles | | |
| 50. Capital changes: | | |
| 50.1 Paid in | | |
| 50.2 Transferred from surplus (Stock Dividend) | | |
| 50.3 Transferred to surplus | | |
| 51. Surplus adjustment: | | |
| 51.1 Paid in | (36,494,658) | 26,633,976 |
| 51.2 Transferred to capital (Stock Dividend) | | |
| 51.3 Transferred from capital | | |
| 51.4 Change in surplus as a result of reinsurance | | |
| 52. Dividends to stockholders | (474,900,000) | (286,500,000) |
| 53. Aggregate write-ins for gains and losses in surplus | 16,829,310 | 0 |
| 54. Net change in capital and surplus for the year (Lines 37 through 53) | 1,053,080,210 | 385,459,119 |
| 55. Capital and surplus, December 31, current year (Lines 36 + 54) (Page 3, Line 38) | 5,786,072,703 | 4,732,992,492 |

| DETAILS OF WRITE-INS | | |
|---|---|---|
| 08.301. Miscellaneous Income | 9,639,096 | 2,746,978 |
| 08.302. | | |
| 08.303. | | |
| 08.398. Summary of remaining write-ins for Line 8.3 from overflow page | 0 | 0 |
| 08.399. Totals (Lines 08.301 thru 08.303 plus 08.398) (Line 8.3 above) | 9,639,096 | 2,746,978 |
| 2701. Miscellaneous Deductions | 13,784,093 | 12,292,355 |
| 2702. | | |
| 2703. | | |
| 2798. Summary of remaining write-ins for Line 27 from overflow page | 0 | 0 |
| 2799. Totals (Lines 2701 thru 2703 plus 2798) (Line 27 above) | 13,784,093 | 12,292,355 |
| 5301. Correction of Error | 16,829,310 | |
| 5302. | | |
| 5303. | | |
| 5398. Summary of remaining write-ins for Line 53 from overflow page | 0 | 0 |
| 5399. Totals (Lines 5301 thru 5303 plus 5398) (Line 53 above) | 16,829,310 | 0 |

Annual Statement for the year 2007 of the **HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY**

# CASH FLOW

| | | 1<br>Current Year | 2<br>Prior Year |
|---|---|---|---|
| | **CASH FROM OPERATIONS** | | |
| 1. | Premiums collected net of reinsurance | 4,049,138,930 | 3,981,524,362 |
| 2. | Net investment income | 824,895,924 | 817,486,490 |
| 3. | Miscellaneous income | 10,520,184 | 3,309,463 |
| 4. | Total (Lines 1 through 3) | 4,884,555,038 | 4,802,320,315 |
| 5. | Benefit and loss related payments | 2,778,692,690 | 2,696,274,250 |
| 6. | Net transfers to Separate Accounts, Segregated Accounts and Protected Cell Accounts | | |
| 7. | Commissions, expenses paid and aggregate write-ins for deductions | 1,015,788,695 | 1,226,427,945 |
| 8. | Dividends paid to policyholders | 208,602 | 179,622 |
| 9. | Federal and foreign income taxes paid (recovered) net of $..........0 tax on capital gains (losses) | (587,466) | (945,610) |
| 10. | Total (Lines 5 through 9) | 3,794,102,521 | 3,921,936,207 |
| 11. | Net cash from operations (Line 4 minus Line 10) | 1,090,452,517 | 880,384,108 |
| | **CASH FROM INVESTMENTS** | | |
| 12. | Proceeds from investments sold, matured or repaid: | | |
| | 12.1  Bonds | 1,978,777,362 | 1,693,291,267 |
| | 12.2  Stocks | 236,907,681 | 62,445,628 |
| | 12.3  Mortgage loans | 110,428,779 | 72,460,441 |
| | 12.4  Real estate | | |
| | 12.5  Other invested assets | 13,671,331 | 33,667,549 |
| | 12.6  Net gains or (losses) on cash, cash equivalents and short-term investments | (29) | (21) |
| | 12.7  Miscellaneous proceeds | 14,118,454 | 23,636,095 |
| | 12.8  Total investment proceeds (Lines 12.1 to 12.7) | 2,353,903,578 | 1,885,500,959 |
| 13. | Cost of investments acquired (long-term only): | | |
| | 13.1  Bonds | 1,627,006,691 | 1,863,400,233 |
| | 13.2  Stocks | 728,900,710 | 258,010,979 |
| | 13.3  Mortgage loans | 404,469,974 | 191,689,362 |
| | 13.4  Real estate | | |
| | 13.5  Other invested assets | 123,953,909 | 70,576,444 |
| | 13.6  Miscellaneous applications | 12,942,354 | 42,996,733 |
| | 13.7  Total investments acquired (Lines 13.1 to 13.6) | 2,897,273,637 | 2,426,673,751 |
| 14. | Net increase (decrease) in contract loans and premium notes | 2,498,445 | (3,823,809) |
| 15. | Net cash from investments (Line 12.8 minus Lines 13.7 and 14) | (545,868,504) | (537,348,983) |
| | **CASH FROM FINANCING AND MISCELLANEOUS SOURCES** | | |
| 16. | Cash provided (applied): | | |
| | 16.1  Surplus notes, capital notes | | |
| | 16.2  Capital and paid in surplus, less treasury stock | (50,000,000) | |
| | 16.3  Borrowed funds | | |
| | 16.4  Net deposits on deposit-type contracts and other insurance liabilities | (6,735,547) | 1,605,818 |
| | 16.5  Dividends to stockholders | 401,625,663 | 269,500,000 |
| | 16.6  Other cash provided (applied) | (130,468,976) | (28,484,554) |
| 17. | Net cash from financing and miscellaneous sources (Lines 16.1 to 16.4 minus Line 16.5 plus Line 16.6) | (588,830,185) | (296,378,736) |
| | **RECONCILIATION OF CASH, CASH EQUIVALENTS AND SHORT-TERM INVESTMENTS** | | |
| 18. | Net change in cash, cash equivalents and short-term investments (Line 11 plus Line 15 plus Line 17) | (44,246,172) | 46,656,389 |
| 19. | Cash, cash equivalents and short-term investments: | | |
| | 19.1  Beginning of year | 486,918,416 | 440,262,027 |
| | 19.2  End of year (Line 18 plus Line 19.1) | 442,672,244 | 486,918,416 |
| | Note:  Supplemental disclosures of cash flow information for non-cash transactions: | | |
| 20.0001 | Capital Contribution for Stock Compensation | 13,505,342 | 26,633,976 |
| 20.0002 | Dividend of Assets to Affiliate Champlain Life Reinsurance Company | 149,274,337 | |

**5**

Annual Statement for the year 2007 of the  HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY

# ANALYSIS OF OPERATION BY LINES OF BUSINESS

| | 1 | 2 | Ordinary — 3 | 4 | 5 | 6 | Group — 7 | 8 | Accident and Health — 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Total | Industrial Life | Life Insurance | Individual Annuities | Supplementary Contracts | Credit Life (Group and Individual) | Life Insurance(a) | Annuities | Group | Credit (Group and Individual) | Other | Aggregate of All Other Lines of Business |
| 1. Premiums and annuity considerations for life and accident and health contracts | 4,047,806,462 | | 30,176,433 | 129,091 | | | 1,148,569,364 | 52,753 | 2,868,353,788 | | 525,033 | |
| 2. Considerations for supplementary contracts with life contingencies | 9,260 | | | | 9,260 | | | | | | | |
| 3. Net investment income | 945,556,253 | | 30,330,630 | 192,438,468 | | | 109,252,194 | 21,020,363 | 342,914,324 | | (15,223) | |
| 4. Amortization of Interest Maintenance Reserve (IMR) | 6,732,601 | | | | | | | | | | | 6,732,601 |
| 5. Separate Accounts net gain from operations excluding unrealized gains or losses | 0 | | | | | | | | | | | |
| 6. Commissions and expense allowances on reinsurance ceded | 881,088 | | (15,914) | | | | 620,469 | | 252,694 | | 23,839 | |
| 7. Reserve adjustments on reinsurance ceded | 0 | | | | | | | | | | | |
| 8. Miscellaneous Income: | | | | | | | | | | | | |
| 8.1 Fees associated with income from investment management, administration and contract guarantees from S/A | 0 | | | | | | | | | | | |
| 8.2 Charges and fees for deposit-type contracts | 0 | | | | | | | | | | | |
| 8.3 Aggregate write-ins for miscellaneous income | 9,639,096 | 0 | 823,251 | 756 | 0 | 0 | 8,815,089 | 0 | 0 | 0 | 0 | 0 |
| 9. Totals (Lines 1 to 8.3) | 5,010,624,760 | 0 | 61,323,660 | 192,568,315 | 0 | 0 | 1,267,257,116 | 21,073,116 | 3,211,520,806 | 0 | 533,649 | 256,348,097 |
| 10. Death benefits | 862,547,401 | | 38,881,867 | | | | 823,665,535 | | | | | |
| 11. Matured endowments (excluding guaranteed pure endowments) | 131,421 | | 6,313 | | | | 125,108 | | | | | |
| 12. Annuity benefits | 16,343,459 | | - | 2,482,977 | | | | 13,860,482 | | | | |
| 13. Disability benefits and benefits under accident and health contracts | 1,849,529,520 | | 188,447 | - | | | 6,643 | | 1,847,743,082 | | 1,591,350 | |
| 14. Coupons, guaranteed annual pure endowments and similar benefits | 0 | | | | | | | | | | | |
| 15. Surrender benefits and withdrawals for life contracts | 22,777,149 | | 21,681,571 | 811,772 | | | 231,902 | | 51,903 | | | |
| 16. Group conversions | 541,987 | | (1,485,423) | | | | 2,027,410 | | | | | |
| 17. Interest and adjustments on contract or deposit-type contract funds | 17,349,749 | | 342,377 | 417,706 | | | 17,685,697 | | (1,096,031) | | | |
| 18. Payments on supplementary contracts with life contingencies | 13,932 | | - | | 13,932 | | | | | | | |
| 19. Increase in aggregate reserves for life and accident and health contracts | 170,950,299 | | (8,317,603) | 112,207 | (3,675) | | 44,308,015 | (4,264,433) | 138,881,857 | | 233,931 | |
| 20. Totals (Lines 10 to 19) | 2,940,184,917 | 0 | 51,297,549 | 3,824,662 | 10,257 | 0 | 888,050,309 | 9,596,049 | 1,985,580,811 | 0 | 1,825,281 | 0 |
| 21. Commissions on premiums, annuity considerations and deposit-type contract funds (direct business only) | 396,026,881 | | 382,415 | | | | 60,827,079 | | 334,817,386 | | | |
| 22. Commissions and expense allowances on reinsurance assumed | 162,040,838 | | | | | | 19,023,897 | | 143,016,941 | | | |
| 23. General insurance expenses | 603,684,093 | | 3,694,261 | 64,605 | | | 135,254,496 | | 422,662,439 | | 450 | 42,007,842 |
| 24. Insurance taxes, licenses and fees, excluding federal income taxes | 84,759,535 | | 884,601 | 2,860 | | | 25,398,000 | | 58,068,114 | | 24,698 | 381,262 |
| 25. Increase in loading on deferred and uncollected premiums | 67,502 | | 67,502 | | | | | | | | | |
| 26. Net transfers to or (from) Separate Accounts net of reinsurance | | | - | | | | | | | | | |
| 27. Aggregate write-ins for deductions | 13,784,093 | 0 | 251,876 | | | | 10,252,106 | 71 | 771,979 | 0 | 0 | 2,508,061 |
| 28. Totals (Lines 20 to 27) | 4,200,547,859 | 0 | 56,578,204 | 3,892,127 | 10,257 | 0 | 1,138,805,888 | 9,596,120 | 2,944,917,670 | 0 | 1,850,429 | 44,897,165 |
| 29. Net gain from operations before dividends to policyholders and federal income taxes (Line 9 minus Line 28) | 810,076,901 | 0 | 4,745,457 | 188,676,188 | (10,257) | 0 | 128,451,228 | 11,476,996 | 266,603,136 | 0 | (1,316,780) | 211,450,932 |
| 30. Dividends to policyholders | 213,031 | | | | 213,031 | | | | | | | |
| 31. Net gain from operations after dividends to policyholders and before federal income taxes (Line 29 minus Line 30) | 809,863,870 | | 4,532,426 | 188,676,188 | (10,257) | | 128,451,228 | 11,476,996 | 266,603,136 | | (1,316,780) | 211,450,932 |
| 32. Federal income taxes incurred (excluding tax on capital gains) | 25,424,186 | | (11,034,408) | (5,730,258) | 51,285 | | | (1,021,499) | 77,827,899 | | 334,783 | (35,003,616) |
| 33. Net gain from operations after dividends to policyholders and federal income taxes and before realized capital gains or (losses) (Line 31 minus Line 32) | 784,439,684 | | 15,566,834 | 194,406,446 | (61,542) | 0 | 128,451,228 | 12,498,495 | 188,775,237 | | (1,651,563) | 246,454,548 |

### DETAILS OF WRITE-INS

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 08.301. Miscellaneous Income | 9,639,096 | | 823,251 | 756 | | | 8,815,089 | | | | | |
| 08.302. | 0 | | | | | | | | | | | |
| 08.303. | 0 | | | | | | | | | | | |
| 08.398. Summary of remaining write-ins for Line 8.3 from overflow page | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 08.399. Total (Lines 08.301 thru 08.303 plus 08.398) (Line 8.3 above) | 9,639,096 | 0 | 823,251 | 756 | 0 | 0 | 8,815,089 | 0 | 0 | 0 | 0 | 0 |
| 2701. Miscellaneous Deductions | 13,784,093 | | 251,876 | | | | 10,252,106 | 71 | 771,979 | | | 2,508,061 |
| 2702. | 0 | | | | | | | | | | | |
| 2703. | 0 | | | | | | | | | | | |
| 2798. Summary of remaining write-ins for Line 27 from overflow page | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 2799. Total (Lines 2701 thru 2703 plus 2798) (Line 27 above) | 13,784,093 | 0 | 251,876 | | | | 10,252,106 | 71 | 771,979 | | | 2,508,061 |

(a) Includes the following amounts for FEGLI/SGLI: Line 1..........0   Line 10..........0   Line 16..........0   Line 23..........0   Line 24..........0.

Annual Statement for the year 2007 of the **HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY**

## ANALYSIS OF INCREASE IN RESERVES DURING THE YEAR

| | 1<br>Total | 2<br>Industrial<br>Life | Ordinary | | | 6<br>Credit Life<br>(Group and<br>Individual) | Group | |
|---|---|---|---|---|---|---|---|---|
| | | | 3<br>Life Insurance | 4<br>Individual Annuities | 5<br>Supplementary<br>Contracts | | 7<br>Life Insurance | 8<br>Annuities |
| **Involving Life or Disability Contingencies (Reserves)** | | | | | | | | |
| (Net of Reinsurance Ceded) | | | | | | | | |
| 1. Reserve December 31, prior year......................... | 1,560,453,016 | | 521,675,543 | 59,882,676 | 108,431 | | 751,931,902 | 226,854,464 |
| 2. Tabular net premiums or considerations.............. | 1,175,833,177 | | 27,081,970 | 129,091 | | | 1,148,569,363 | 52,753 |
| 3. Present value of disability claims incurred........... | 121,582,997 | | | | XXX | | 121,582,997 | |
| 4. Tabular interest............................................. | 69,529,300 | | 24,658,489 | 3,475,269 | 10,258 | | 31,841,988 | 9,543,296 |
| 5. Tabular less actual reserve released.................. | 15,100 | | 171,470 | (156,370) | | | | |
| 6. Increase in reserve on account of change in valuation basis..... | 0 | | | | | | | |
| 7. Other increases (net)..................................... | 0 | | | | | | | |
| 8. Totals (Lines 1 to 7)...................................... | 2,927,413,590 | 0 | 573,587,472 | 63,330,666 | 118,689 | 0 | 2,053,926,250 | 236,450,513 |
| 9. Tabular cost................................................. | 1,260,239,391 | | 25,160,598 | | XXX | | 1,235,078,793 | |
| 10. Reserves released by death............................. | 27,589,352 | | 8,559,426 | XXX | XXX | | 19,029,926 | XXX |
| 11. Reserves released by other terminations (net)..... | 27,171,803 | | 26,360,031 | 811,772 | | | | |
| 12. Annuity, supplementary contract, and disability payments involving life contingencies...... | 16,593,512 | | 188,447 | 2,524,008 | 13,932 | | 6,643 | 13,860,482 |
| 13. Net transfers to or (from) Separate Accounts....... | 0 | | | | | | | |
| 14. Total deductions (Lines 9 to 13)....................... | 1,331,594,058 | 0 | 60,268,502 | 3,335,780 | 13,932 | 0 | 1,254,115,362 | 13,860,482 |
| 15. Reserve December 31, current year.................... | 1,595,819,532 | 0 | 513,318,970 | 59,994,886 | 104,757 | 0 | 799,810,888 | 222,590,031 |